Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
Paul J. Hanley, Jr.
(pro hac vice to be filed)
Mitchell M. Breit
(pro hac vice to be filed)
mbreit@simmonsfirm.com
**Simmons Hanly Conroy LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555

Gregory F. Coleman
(pro hac vice to be submitted)
greg@gregcolemanlaw.com
**Greg Coleman Law PC**
First Tennessee Plaza
800 S. gay Street, Suite 1100
Knoxville, TN 37929
Phone:  (865) 247-0080
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY STEWART and ROBERT STEWART, on behalf of themselves and all others similarly situated<br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Shelly Stewart ("Plaintiff") individually and on behalf of all others similarly situated,

1

1    bring this action against Electrolux Home Products, Inc. ("Electrolux" or "Defendant"). The
2    following allegations are based upon personal knowledge as to Plaintiff's' own conduct, the
3    investigation of counsel, and upon information and belief as to the acts of others.

**INTRODUCTION**

6    1.   Plaintiffs represent a proposed class of thousands of consumers who owned and used
7    residential gas oven ranges designed and manufactured by Defendant Electrolux Home Products,
8    Inc. and sold under the Electrolux, Frigidaire, and Kenmore brand names (the "Class Ranges").
9    These ranges are defective because they are fitted with thermostat's that do not support the
10   temperatures reached when the oven's self-cleaning feature is engaged.

11   2.   The defect is exemplified by Plaintiffs' experiences when Plaintiffs engaged the oven's
12   self-cleaning option for the first time, which resulted in the oven's failure to continue to operate.

13   3.   Electrolux has known of these dangerous defects for years; however, to date, it has
14   failed to recall the defective product or to inform or the public that its ranges are defective and
15   pose a serious safety risk.   There are a number of reports of consumers' failed Electrolux
16   thermostats      from      the      Consumer      Affairs      websites.          *See*
17   https://www.consumeraffairs.com/homeowners/kenmore_ovens.html   and this website was last
18   visited on August 31, 2017.[1]

19   4.   Electrolux's conduct violates well-established contract, tort, and consumer protection
20   laws of California, California and of other states.

21   5.   Plaintiffs Shelly and Robert Stewart bring this suit on behalf of themselves and other
22   similarly-situated consumers.   They seek damages and appropriate equitable relief, including an
23   order enjoining Electrolux from selling these ranges without disclosing the defect to consumers.

**PARTIES**

---

[1] Exhibit 1 to this Complaint contain representative samples of consumer reports from these websites and regarding self-clean Electrolux oven failures.

6.   Plaintiffs Shelly and Robert Stewart are residents of 1625 Kensington Park Drive, Modesto, California, County of Stanislaus.

7.   Defendant Electrolux Home Products, Inc. is a Delaware corporation that maintains its principal place of business at 10200 David Taylor Drive, Charlotte, Mecklenburg County, North Carolina 29262.

## JURISDICTION AND VENUE

8.   This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Electrolux, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, (c) the proposed class consists of more than 100 members, and (d) none of the exceptions under the subsection apply to this action.

9.   This Court has jurisdiction over Electrolux because it is registered to conduct business in California, has sufficient minimum contacts in California, and otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

10.  Venue is proper in this District under 28 U.S.C. § 1391 because Electrolux conducts substantial business in this District and a substantial part of the Stewart Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

11. Electrolux is the world's second-largest appliance maker by units sold.  It sells under a variety of brand names including its popular Frigidaire and Kenmore brands.

12. The oven's thermostat burns out while using the self-cleaning feature of the oven. Because of inherent design and manufacturing flaws (the "Defect") known to Electrolux, its Frigidaire and Kenmore oven thermostats are defective.

13. The Plaintiff's oven range lasted only three months until it quit functioning. The National Association of Home Builders reported in a 2007 study, conducted with Bank of America Home Equity, that the life expectancy of an electric range is thirteen years and that of a gas range is fifteen years. In the Appliance Market Research Report from June 2011 entitled "U.S. Appliance Industry: Market Value, Life Expectancy & Replacement Picture 2011," the UBM Canon Company—a global provider of media and information services for the manufacturing industries—concludes that the low to high life expectancy of electric ranges is 12-19 years and for gas ranges, the life expectancy is 14-22 years.

## ELEXTROLUX'S NOTICE OF THE DEFECTS

14. Exhibit 1 to this Complaint contains a representative sample of consumer complaints (as submitted, uncorrected for grammar/spelling/punctuation) posted on the Consumer Affairs' website regarding Electrolux's Kenmore gas oven ranges and oven failures. *See* "Complaints and Reviews about Kenmore Gas Ranges": *See* https://www.consumeraffairs.com/homeowners/kenmore_ovens.html and this website was last visited on August 31, 2017

15. Before placing its ovens into the stream of commerce, Electrolux had actual knowledge that the ovens contained the Defects created an unreasonable risk of oven failure.

16. Electrolux knew of the Defects prior to sale because of its own early warning systems and statistical analyses that it employs, or should have employed, to detect problems before they can affect consumers. The results of early warning tests and audits would have informed Electrolux—prior to sale— that its ovens were defective.

17. In addition, Electrolux also conducts a significant amount of after-market testing that should have informed it that its ovens had a defective electrical system. Upon information and belief, Electrolux monitors warranty statistics and service call rates in order to detect problems as soon as customers begin to experience them. Electrolux also tracks returned products and parts to investigate product faults in an effort to reduce their warranty claims rate. Quality engineers also

monitor customer complaints from Electrolux's call center and other sources to detect increases in problems. Given that the electrical systems can fail quite rapidly, after-market testing would have also informed Electrolux that the ovens were defective.

18. Electrolux's actions related to designing, testing, manufacturing, selling, distributing, and warranting defective oven ranges have caused Plaintiff's and the other putative Class Members to suffer property loss, financial harm, loss of use, and other damages.

### PLAINITFF'S EXPERIENCE

19. In June, 2015, Plaintiffs purchased a new Kenmore Elite oven, manufactured by Electrolux, Model No. 790.48353410, Serial No. AF51804536, from Sears in Modesto, California. The purchase price was $1964.99.

20. The Stewarts purchased this particular model of oven because of its self-cleaning feature.

21. On September 9, 2015, Ms. Stewart, used the oven's self-cleaning feature for the first time. After two or three hours, Plaintiff checked the oven and discovered that the oven stopped working.

22. Plaintiffs contacted Sears about the oven and was told that Sears is aware of the issues but that appliance was out of warranty and would need to pay to have the oven repaired themselves.

23. On September 12, 2015 an inspection of the range by a Sears' repairman revealed that the range's thermostat could not support the temperature that is reached when the oven's self-cleaning feature is engaged. In fact, the Sears repairman advised Plaintiff to never engage the self-cleaning function.

24. On September 12, 2016, Plaintiff was charged $184.37 for the Sears Repairman to install a new thermostat.

25. Below are photographs of the Stewarts' range:



Stewart Oven – Photograph No. 1

6

COMPLAINT



Stewart Oven's Serial Number - Photograph No. 2

COMPLAINT



Stewart Oven's Thermostat - Photograph No. 3

26. The Stewarts would not have purchased the electric range at issue had Electrolux disclosed that the range's electrical system contained the Defects at the point of sale. The Defects caused their range to stop working. Because of the Defects, Plaintiffs did not receive the benefit of their bargain.

**CLASS ACTION ALLEGATIONS**

27. Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Electrolux of their own and on behalf of the National Class and the California State class (collectively the "Classes") as defined below.

**National Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured oven range primarily for personal, family, or household purposes having the Defect and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defects.

Plaintiff's also bring this case on behalf of the State classes listed below and propose these subclasses in the interest of judicial economy and efficiency. At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff's may modify these classes in the future.

**California Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of California an Electrolux designed and/or manufactured oven range primarily for personal, family, or household purposes having the Defects and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defects.

"Class Ranges" include Electrolux's Frigidaire and Kenmore residential electric and gas oven ranges that contain the Defects.

28. **Excluded from the proposed Classes are:** (a) any Judge or Magistrate presiding over this action and members of their families; (b) Electrolux and any entity in which Electrolux

has a controlling interest or which has a controlling interest in Electrolux; (c) the officers and directors of Electrolux; (e) Electrolux's legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Classes.

29. **Numerosity:** While the exact number of class members cannot yet be determined, the Classes consists at a minimum of thousands of people dispersed throughout the United States and throughout the State of California, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Electrolux.

30. **Commonality:** Common questions of law and fact exist as to all members of the Classes. Among the questions of law and fact common the Classes are:

    a.    Whether the oven ranges designed, manufactured, and sold by Electrolux pose a safety risk to consumers;

    b.    Whether Electrolux knew, or should have known, that the Class Ranges it sold into the stream of commerce posed an unreasonable safety risk to consumers;

    c.    Whether Electrolux concealed the safety risk its Class Ranges posed to consumers;

    d.    Whether the safety risk the Class Ranges pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase an oven range;

    e.    Whether the Class Ranges designed and manufactured by Electrolux possess any material defect;

f.    Whether the Class Ranges contain a defect presenting an unreasonable risk of oven failure, melting, burning, and fire;

g.    Whether Electrolux knew, or should have known, that the Class Ranges contained the Defects when it placed the ranges into the stream of commerce;

h.    Whether Electrolux concealed the Defects from consumers;

i.    Whether the existence of the Defects is a material fact that reasonable purchasers would have considered in deciding to purchase an oven range for in-home use;

j.    Whether the Class Ranges designed and/or manufactured by Electrolux are of merchantable quality;

k.    Whether the Class Ranges designed and manufactured by Electrolux are likely to pose a serious safety risk to consumers before the end of their reasonable expected lives;

l.    Whether the Class Ranges are likely to burn, melt, catch fire, or otherwise fail before the end of their reasonable expected life;

m.    Whether Electrolux breaches express warranties relating to the Electrolux Class Ranges by failing to recall, replace, repair, and/or correct the Defects in the ranges;

n.    Whether Electrolux breached implied warranties of merchantability relating to the Class Ranges;

o.    Whether Electrolux mispresented the characteristics, qualities, and capabilities of the Class Ranges;

11

COMPLAINT

p.   Whether Electrolux knew, or in the exercise of reasonable care, should
have known of the Defects prior to distributing these oven ranges to
Plaintiff's and Class Members;

q.   Whether Electrolux omitted, concealed from and/or failed to disclose in its
communications and disclosures to Plaintiff's and Class Members material
information regarding the Defects;

r.   Whether Electrolux failed to warn consumers regarding the Defects in its
Class Ranges;

s.   Whether Electrolux made fraudulent, false, deceptive, misleading and/or
otherwise unfair and deceptive statements in connection with the sale of
the Class Ranges in its oven range literature and on its website, including
those relating to  standards, use and reliability and otherwise engaged in
unfair and deceptive trade practices pertaining to the Class Ranges;

t.   Whether Electrolux was unjustly enriched as a result of selling the
defective oven ranges;

u.   Whether Electrolux should be ordered to disgorge all or part of the profits
it received from the sale of the Class Ranges;

v.   Whether Plaintiff's and Class Members are entitled to damages including
compensatory, exemplary, and statutory damages, and the amount of such
damages;

w.   Whether Plaintiff's and Class Members are entitled to replacement of their
respective Class Range;

x.     Whether Plaintiff's and Class Members are entitled to equitable relief, including an injunction and requiring that Electrolux engage in a corrective notice campaign and/or a recall of the Class Ranges; and

y.     Whether Plaintiff's and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

31. **Typicality:** Plaintiff has substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff's and all Class Members own or owned an oven range designed and/or manufactured by Electrolux with a uniform Defect that makes the oven ranges immediately dangerous upon purchase and causes them to fail within their expected useful lives and burn, melt, catch on fire, and burn areas surrounding the ranges in consumers' homes. All of the claims of Plaintiff's and Class Members arise out of Electrolux's placement into the marketplace of oven ranges it knew were defective and caused a safety risk to consumers and from Electrolux's failure to disclose those known safety risks and defects. Also common to Plaintiff's and Class Members' claims is Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting, and/or selling the defective oven ranges, Electrolux's conduct in concealing the Defects in the oven ranges, and Plaintiff's and Class Members' purchase of the Class Ranges.

32. **Adequacy of Representation:** Plaintiff is committed to pursuing this action and has retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those

of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

33. The elements of Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the Class Members and the general public will continue to remain at an unreasonable and serious safety and property damage risk as a result of the Defects. Electrolux has acted and refused to act on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

34. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Electrolux, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff's. Plaintiff's' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

35. The claims alleged herein accrued upon discovery of the defective nature of the oven ranges. Because the Defects alleged herein is hidden and Electrolux took steps to either conceal or fail to disclose the true character, nature, and quality of the Class Ranges, Plaintiff's and Class

Members did not discover and could not have reasonably discovered that through reasonable and diligent investigation.

36. Any applicable statutes of limitations have been tolled by Electrolux's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiff and Class Members could not have reasonably discovered the true defective nature of their oven ranges until such time as the defect manifested by failing and, including, catching on fire.  As a result of Electrolux's active concealment of the Defects and/or failure to inform Plaintiff's and Class Members of the Defects, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

37. Alternatively, the facts alleged above give rise to estoppel.  Electrolux has actively concealed the defective nature of the oven ranges.  Electrolux was and is under a continuous duty to disclose to Plaintiff's and Class Members the true character, quality, and nature of the Class Ranges, particularly that they posed a serious risk to life and property.  At all relevant times and continuing to this day, Electrolux knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Ranges.  Given Electrolux's failure to disclose this non-public information about the defective nature of the ranges—information over which it had exclusive control—and because Plaintiff's and Class Members could not reasonably have known that the Class Ranges were thereby defective, Plaintiff and Class Members reasonably relied on Electrolux's affirmative and/or ongoing concealment.  Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

Additionally, Electrolux is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

**CLAIMS FOR RELIEF**
**COUNT I**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301, *ET SEQ.***
**(PLAINTIFF LISA MELBY INDIVIDUALLY AND ON BEHALF THE NATIONAL CLASS**
**AND, ALTERNATIVELY, THE CALIFORNIA CLASS)**

38. Plaintiff Stewart re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

39. Plaintiff Stewart (for purposes of this section, "Plaintiff") brings this action on behalf of herself, the National Class, and the California Class.

40. Plaintiff and other members of the Classes are "consumers" within the meaning of 15 U.S.C. § 2301(3).

41. Electrolux is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301 (4)-(5).

42. Class Ranges, including the Stewart range, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

43. Electrolux provided a written warranty under 15 U.S.C. § 2301(6) to all members of the Classes under which Electrolux warranted that the Class Ranges would be free from defects in materials or workmanship for a year from the original date of purchase including to those consumers, such as Plaintiff, who purchased extended warranties—the extended warranties adding an additional three years' guarantee of non-defective materials and workmanship.

44. Electrolux guarantees the range to be free from defects and to cover repair and replacement costs for one year from date of purchase in its original warranty and for an additional three years in the extended warranty purchased by Shelly Stewart.

16
COMPLAINT

45. Electrolux is required to repair or replace the Class Ranges that fail during the warranty periods and to pay for all damages related to the Class Range failure(s) at no charge to the consumer.

46. Plaintiff and other Class Members experienced the Defect in their Class Ranges during the period of warranty coverage.

47. Electrolux breached its warranty obligations by failing to repair and/or replace Class Members' ranges and pay for the fire damage caused by the defect at no charge to Class Members. Electrolux breached its obligations to Plaintiff and the other Class Members by failing to honor its warranty obligations.

48. Electrolux's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

49. The amount in controversy of the Plaintiff's individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

50. Electrolux has been afforded reasonable opportunity to cure its breaches of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have sent notice to Electrolux's principal place of business to provide it with reasonable opportunity to correct its business practice and cure its breaches of warranties under the MMWA. Electrolux has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their damages caused by the Defects.

51. In addition, resorting to any sort of informal dispute settlement procedure or affording Electrolux another opportunity to cure its breach of warranty is unnecessary and futile. Any

1  remedies available through any informal dispute settlement procedure would be inadequate

2  under the circumstances, as Electrolux has repeatedly failed to disclose the Defects or provide

3  replacement and repair costs and, as such, has indicated no desire to participate in such a process

4  at this time.  Any requirement under the MMWA or otherwise that Plaintiff submit to any

5  informal dispute settlement procedure or otherwise afford Electrolux a reasonable opportunity to

6  cure its breach of warranty is excused and/or has been satisfied.

7        52. As a direct and proximate result of Electrolux's warranty breach, Plaintiff and Class

8  Members sustained damages and other losses to be determined at trial.  Electrolux's conduct

9  damaged Plaintiff and Class Members, who are entitled to recover damages, specific

10  performance, costs, attorneys' fees, and other appropriate relief.

11

12                           **COUNT II**

13

14                  **UNJUST ENRICHMENT**
   **(PLAINTIFF'S INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS AND,**
15       **ALTERNATIVELY, THE CALIFORNIA CLASS)**

16        53. Plaintiff's re-allege all preceding paragraphs and incorporate them by reference as

17  though fully set forth herein.

18        54. As described above, Electrolux sold Class Ranges to Plaintiff and Class Members

19

20  even though the ranges were defective and posed a safety hazard.  Electrolux failed to disclose

21  the Defects and its attendant, and potentially deadly, risks at the point of sale or otherwise.

22        55. Electrolux unjustly charges Plaintiff's and Class Members for repairs and/or

23  replacement of the defective oven ranges without disclosing that the Defects is widespread, and

24  repairs do not address the root cause of the Defects.

25        56. As a result of its acts and omissions related to the Defects, Electrolux obtained

26  monies that rightfully belong to Plaintiff's and Class Members.

27

28                           18
                         COMPLAINT

57. Electrolux appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff's and Class Members who, without knowledge of the Defects, paid a higher price for their Class Ranges than those ranges were worth. Electrolux also received monies for those oven ranges that Plaintiff's and Class Members would not have otherwise purchased.

58. Electrolux's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

59. Plaintiff and Class Members seek restitution from Electrolux and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Electrolux from its wrongful conduct and establishment of a constructive trust from which Plaintiff's and Class Member may seek restitution.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**(PLAINTIFF'S INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS)**

60. Plaintiff's re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

61. The implied warranty of merchantability included with the sale of each Electrolux oven range means that Electrolux warranted that its oven ranges would be merchantable, fit for the ordinary purposes for which oven ranges are used, pass without objection in the trade, be of fair and average quality, and conform to promises and affirmations of fact made on the container and label. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Electrolux and Plaintiff and Class Members.

62. At the time of delivery, however, Electrolux breached the implied warranty of merchantability because its Class Ranges were defective as alleged above, posed serious safety risks at the time they were sold, would not pass without objection, are not fit for the ordinary

19
COMPLAINT

purpose of safely cooking in a residential setting, and failed to conform to the standard of performance of like products used in the trade.

63. Within a reasonable amount of time after the Defects manifested itself to Plaintiff's and Class Members, Electrolux received notice of its breach of implied warranty by virtue of its knowledge of the Defects. Electrolux knew or, in the exercise of reasonable care, should have known that the ovens posed safety risks and were defective prior to sale of these Class Ranges to Plaintiff's and Class Members.

64. Any implied warranty limitation cannot be enforced here because it is unconscionable. A substantial disparity in the parties' relative bargaining power existed such that Plaintiff's and Class Members were unable to derive a substantial benefit from their warranties. A disparity existed because Electrolux was aware that its Class Ranges were inherently defective; Plaintiff's and the Class had no notice or ability to detect the problem; Electrolux knew that Plaintiff's and the Class had no notice or ability to detect the problem; and Electrolux knew that Plaintiff's and the Class Members would bear the cost of correcting any defect. In this case, the disparity was increased by Electrolux's knowledge and failure to disclose that the Defects would substantially limit the oven range's intended use and could cause catastrophic failures.

65. The element of privity, if applicable here, exists because Electrolux had direct written communications with Plaintiff's and Class Members regarding their Class Ranges in the form of warranty forms, manuals, registration cards, communications regarding defect failures, or similar documents. Electrolux advertised the ranges for sale via direct communications with Plaintiff's and Class Members through television, the internet, magazine advertisements, and the like. The dealers who sold the oven ranges to Plaintiff's and Class Members are Electrolux's agents.

Electrolux entered into contracts with Plaintiff's and Class Members through warranties, including extended warranties; and Plaintiff's and Class Members are third-party beneficiaries of warranties that ran from Electrolux to their dealer-agents. Further, Electrolux designed and manufactured the Class Ranges intending Plaintiff's and Class Members to be the ultimate users of these oven ranges.

66. As a direct and proximate result of Electrolux's breach of its implied warranties, Plaintiff's and Class Members purchased unsafe products which could not be used for their intended use of cooking in a residential setting, and thus have been damaged. Plaintiff's and Class Members seek damages in an amount to be determined at trial.

## COUNT IV
## INJUNCTIVE AND DECLARATORY RELIEF
## (PLAINTIFF'S INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS)

67. Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

68. There is a controversy between Electrolux and Plaintiff and the other Class Members concerning the existence of the Defects in the oven ranges.

69. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

70. Accordingly, Plaintiff and Class Members seek a declaration that these ranges have a common defect(s) in their design/manufacture.

71. Additionally, Plaintiff and Class Members seek a declaration that this common defect poses a serious risk to consumers and the public.

72. Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold oven ranges which contain material and dangerous defects as described

herein.  Based upon information and belief, Electrolux continues to design, manufacture, produce, test, inspect, market, distribute, and sell oven ranges which contain material and potentially dangerous defects as described herein.

73. Based upon information and belief, Electrolux has taken no corrective action concerning the Defects described herein, has not issued any warnings or notices concerning the dangerous Defects, nor implemented an oven range recall for this set of ranges and for the Defects.  Thus, Plaintiff and the Class Members face the risk of real injury in that, because the Defects remains in the oven ranges, the range owners could be injured in purchasing replacement oven ranges with the same electrical malfunction and such defects could cause the same type of damages/injury described herein.

74. Plaintiff and the Class have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Electrolux oven range defects described herein.  Electrolux should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the oven ranges; (b) issuing warnings and/or notices to consumers and the Classes concerning the defects; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective oven ranges described in this Complaint.

**COUNT V**

**STRICT LIABILITY – DESIGN DEFECT**
**(PLAINTIFF'S INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS AND,**
**ALTERNATIVELY, THE CALIFORNIA CLASS)**

75. Plaintiff re-alleges all preceding paragraphs and incorporate them by reference as though fully set forth herein.

76. Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances and did design, manufacture, distribute, advertise, market, promote and/or sell the Class Ranges herein.

77. Electrolux's Class Ranges were expected to and did reach Plaintiff and Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

78. The ovens were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, often resulting in fire.

79. Plaintiff and Class Members used the subject ovens in a manner reasonably intended by Electrolux.

80. The Class Ranges are defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiff and Class Members, either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the ovens; the ovens contained material design defects and were not reasonably safe due to such defects; the design, methods of manufacture and testing of the ovens did not conform to generally-recognized and prevailing standards or the state of the art in existence at the time the design was made and when the ovens were manufactured; and at the time the ovens left Electrolux's control, the foreseeable risks associated with the ovens' design exceeded the benefits associate with the design.

81. Plaintiff and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

82. Electrolux acted with malice, oppression and/or fraud, and in conscious and flagrant disregard to the safety of their consumers by manufacturing and selling ovens known to be defective and unreasonably dangerous.  As alleged, Electrolux knew or should have known that the Defects would cause their ovens to fail, combust, and catch fire—damaging the ovens and other property, and threatening the personal safety of the consumers.  Electrolux knew or was repeatedly informed of the serious defects, yet failed to take any remedial action and instead continued to sell these defective products.  Given Electrolux's conscious disregard for the safety of the public, Plaintiff and Class Members seek exemplary or punitive damages.

**COUNT VI**
**STRICT LIABILITY – FAILURE TO WARN**
**(PLAINTIFF'S INDIVIDUALLY AND ON BEHALF OF THE CALIFORNIA STATE CLASS)**

83. Plaintiff re-alleges all preceding paragraphs and incorporate them by reference as though fully set forth herein.

84. The Class Ranges were designed, manufactured, and sold by Electrolux in the regular course of business and were expected to reach Plaintiff's and Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

85. The ovens were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that the electrical failures would spontaneously occur, resulting in fire.

86. Electrolux had no reason to believe that consumers of its Class Ovens would be aware of the foreseeable harm associated with their use.

87. Prior to and after selling the ovens to Plaintiff's and Class Members, Electrolux had a legal duty to warn about the Defects in the ovens and the dangers such defects posed.

88. Prior to and after distributing the Class Ranges to Plaintiff's and Class Members, Electrolux and their agents who sold or serviced the ovens failed to warn Plaintiff's and Class Members of the Defects.

89. As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the Class Ranges, Plaintiff's and Class Members suffered property damage and other incidental and consequential damages.

90. Electrolux acted with malice, oppression, and/or fraud, and in conscious and flagrant disregard of the safety of their consumers by manufacturing and selling ovens known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew that the Defects would cause their ovens to fail, combust, catch fire, melt, damage the ovens and other property, and could threaten the personal safety of consumers. Electrolux knew of, and was repeatedly informed of this serious Defects, yet failed to take any remedial action and instead continued to sell the defective products. Given Electrolux's conscious disregard for the safety of the public, Plaintiff's and Class Members seek exemplary or punitive damages.

## COUNT VII
## FRAUDULENT CONCEALMENT (PLAINTIFF
## INDIVIDUALLY AND ON BEHALF OF THE CALIFORNIA CLASS)

91. Plaintiff's re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

92. Electrolux concealed material facts from Plaintiff's, Class Members, and the public generally. Electrolux knew that its ovens contained defects in the electrical systems, but concealed those facts such that consumers had no such knowledge.

1    93. Electrolux had a duty to disclose the Defects to Plaintiff's and Class Members, but it
2    failed to do so.

3    94. Electrolux also knew that Plaintiff's and Class Members had no knowledge that its
4    Class Ranges were defective and that they did not have an equal opportunity to discover the
5    facts. Electrolux was in a superior position than Plaintiff's and Class Members.

6    95. By failing to disclose the material facts concerning its Class Ranges, Electrolux
7    intended to induce Plaintiff's and Class Members into purchasing the those ovens.
8
9    96. Plaintiff and Class Members would not have purchased their Class Ranges had they
10   known that the ovens have defective electrical systems or Plaintiff's and Class Members would
11   not have paid as much as they did.  Electrolux benefited from the sales of these ovens as a result
12   of its nondisclosure.

13   97. When Class Members experienced problems with their ovens and called Electrolux to
14   make warranty claims, Electrolux routinely charged Class Members a fee to inspect the ovens or
15   otherwise determined—without inspection—that it would not cover the cost of repair or
16   replacement.  Alternatively, Electrolux routinely failed to honor its warranties with consumers
17   concerning the Defect because it did not offer consumers who experienced failures with their
18   ovens the necessary repair or replacement costs.
19

20   98. As a direct and proximate result of Electrolux's conduct, Plaintiff's and Class
21   Members have suffered damages.

22   99. Electrolux's conduct was knowing, intentional, with malice, demonstrated a complete
23   lack of care, and was in reckless disregard of the rights of Plaintiff's and Class Members such
24   that punitive damages are appropriate.
25

26                            **COUNT VIII**
27   **VIOLATIONS OF CALIFORNIA'S CONSUMER  LEGAL REMEDIES ACT ("CLRA")**

28                                  26

**(PLAINTIFF SHELLY STEWART INDIVIDUALLY AND ON BEHALF OF THE
CALIFORNIA CLASS)**

100.    Plaintiff re-alleges all preceding paragraphs and incorporate them by reference as though fully set forth herein.

101.    Plaintiff Shelly Stewart (for purposes of this section, "Plaintiff") bring this action on behalf of herself and the California Class against Electrolux.

102.    Plaintiff and the California Class are "consumers" within the meaning of California Civil Code § 1761(d). Plaintiff and California Class members purchased or leased one or more Class Oven Ranges.

103.    Electrolux is a "person" within the meaning of California Civil Code § 1761(c).

104.    In the course of Electrolux's business, Electrolux engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Ranges are defective. These acts and practices violate, at a minimum, the following sections of the CLRA.

    (a)(2)  Misrepresenting the source, sponsorship, approval or certification of goods or services;

    (a)(5)  Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

    (a)(7)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

    (a)(9)  Advertising goods and services with the intent not to sell them as advertised.

105.    Defendants unfair or deceptive acts or practices occurred repeatedly in Defendants trade or business and were capable of deceiving a substantial portion of the purchasing public.

106.    Defendants knew that the Class Ranges were defective, prone to failing for their essential purpose as phones, and would become useless as a result of reasonable and foreseeable use by consumers.

107.    Defendant was under a duty to Plaintiffs and the Class members to disclose the defective nature of the Class Ranges because:

    a.    Defendant was in a superior position to know the true state of facts about the Defect in the Class Ranges;

    b.    Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Ranges were defective and not in accordance with Defendants advertisements and representations;

    c.    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Defect in the Class Ranges; and

    d.    Defendant actively concealed and failed to disclose the Defect from Plaintiffs and the Class.

108.    In failing to disclose the Defect at the time of sale, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

109.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants Class Ranges or pay a lesser price. Had Plaintiffs and the Class known about the Defect in the Class Ranges, they would not have purchased the Class Ranges or would have paid less for them.

110.    Plaintiffs will provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks injunctive relief. After the 30-day notice period expires, Plaintiffs will amend this complaint to seek monetary damages under the CLRA.

111.    Plaintiffs and the other Class members' injuries were proximately caused by Defendants fraudulent and deceptive business practices.

112.    Therefore, Plaintiffs and the other Class members are entitled to equitable relief under the CLRA.

## COUNT IX

### VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 (PLAINTIFF SHELLY STEWART INDIVIDUALLY AND ON BEHALF OF THE CALIFORNIA CLASS)

113.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

114.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

115.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class members the Defect (and the costs and diminished value of the Class Ranges as a result of Defendant's conduct). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Defect.

116.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Defect and suppressing other material facts from Plaintiffs and the Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiffs and the Class members, as it would have been to all reasonable consumers.

117.   The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

118.   Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

119.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT X

## VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
## (PLAINTIFF SHELLY STEWART INDIVIDUALLY AND ON BEHALF OF THE CALIFORNIA CLASS)

120.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

121.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

COMPLAINT

122.    Defendant caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

123.    Defendant has violated section 17500 because the misrepresentations and omissions regarding the functionality of its Class Ranges as set forth in this Complaint were material and likely to deceive a reasonable consumer.

124.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their Class Ranges, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the Class Ranges. Defendant's representations were untrue because the Class Ranges were manufactured and sold with the Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their Class Ranges and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Class Ranges and did not receive the benefit of their bargain.

125.    All of the wrongful conduct alleged herein occurred in the conduct of Defendants business.

126.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT XI

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE § 1790 *et seq.*

### (Plaintiff individually and on behalf of the California Class)

127.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

108.    Class Ranges are "consumer goods" and Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791. Toyota is also a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

128.    The implied warranty of merchantability included with the sale of each Class Ranges means that Defendant warranted that each Class Range:

      (a)    would pass without objection in trade under the contract description;

      (b)    was fit for the ordinary purposes for which the Class Range would be used; and

      (c)    conformed to the promises or affirmations of fact made on the container label.

129.    The Class Range would not pass without objection in the appliance trade because their ranges are inherently defective in that they have a propensity to stop working when the self-cleaning option is engaged, or otherwise fail, making them unfit for the ordinary purpose for which the Class ranges are normally used.

130.    The Class Ranges are not adequately labeled because their labeling fails to disclose and/or advise Plaintiff or Class Members of the existence of the defect.

131.    Defendant's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class ranges to be worth less than what Plaintiff and Class Members paid for them.

132.    As a direct and proximate result of Defendant's conduct as described herein, Plaintiff and Class Members received goods in a condition that substantially impairs their value. Plaintiff and Class Members have been damaged by the diminished value of their Class ranges, among other ways.

133.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Ranges or the overpayment or diminution in value of their Class Ranges. They are also entitled to all incidental and consequential damages resulting from Defendant's conduct, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

A.    An order certifying the proposed National and California Classes;

B.    An order awarding Plaintiff's and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.    An order awarding Plaintiff's and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.    An order requiring Electrolux to adequately disclose and repair or replace the defective Class Ranges;

E.    An order (a) issuing a nationwide recall of the oven ranges; (b) issuing warnings and/or notices to consumers and the Class Members concerning the defects; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective oven ranges described in this Complaint.

COMPLAINT

F.   An order awarding Plaintiff's and Class Members pre-judgment and post-judgment interest as allowed by law;

G.   An order awarding Plaintiff's and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

H.   An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff's demand a trial by jury on all issues so triable under the law.

DATED:  September 8, 2017          Respectfully submitted,


*/s/ Crystal Foley*
Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
cfoley@simmonsfirm.com

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
Mitchell M. Breit
(*pro hac vice* to be submitted)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gregory F. Coleman
(*pro hac vice* to be submitted)
Mark E. Silvey
(*pro hac vice* to be submitted)
Adam A. Edwards
(*pro hac vice* to be submitted)
Lisa A. White
(*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

**Attorneys for Plaintiff**

COMPLAINT