UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY STEWART AND ROBERT STEWART, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendant. | 1:17-cv-01213-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER ON ELECTROLUX'S MOTION TO DISMISS<br><br>(Doc. 8.) |

## I. <u>INTRODUCTION</u>

In September 2017, Plaintiffs filed a putative class action complaint against Electrolux Home Products, Inc. ("Electrolux") alleging defects in a self-cleaning oven Electrolux manufactures. (Doc. 1.) Electrolux filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting many of Plaintiffs' claims are insufficiently pled. Plaintiffs filed a brief in opposition, Electrolux filed a reply brief, and the matter was taken under submission. For the reasons set forth below, Electrolux's motion to dismiss is GRANTED in PART and DENIED in PART.

## II. FACTUAL BACKGROUND

In June 2015, Plaintiffs purchased a Kenmore Elite oven, manufactured by Electrolux, from Sears for $1,964.99. Plaintiffs purchased this model for its self-cleaning feature. On September 9, 2016, Plaintiffs used the self-cleaning feature for the first time, but after a few hours, discovered that the oven had stopped working. When Plaintiffs contacted Sears, they were told that Sears was aware of the issues with the oven, but the warranty had expired and Plaintiffs would need to pay for the repairs themselves. On inspection of the oven by a Sears' repairperson, the oven's thermostat could not support the temperature that was reached when the oven's self-cleaning feature was engaged. The repairperson advised Plaintiffs never to engage the self-cleaning function again. Plaintiffs were charged $184.37 for Sears to install a new thermostat.

Plaintiffs assert claims on behalf of themselves and on behalf of a National and a California State Class which include all persons who "acquired an Electrolux designed and/or manufactured oven range primarily for personal, family, or household purposes . . . . " (Cmplt., ¶ 27.) Plaintiffs identify the following defect in the oven: "[t]he oven's thermostat burns out while using the self-cleaning feature of the oven. Because of inherent design and manufacturing flaws (the "Defect") known to Electrolux, its Frigidaire and Kenmore oven thermostats are defective." (Cmplt., ¶ 12.)

Electrolux has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), challenging the sufficiency of the claims alleged in the complaint.

## III. LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all

doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>ANALYSIS</u>

**A.    Economic Loss Rule Precludes Plaintiffs' Strict Liability and Fraudulent Concealment Claims as Currently Pled**

Electrolux contends that Plaintiffs' strict liability and fraudulent concealment claims are barred by the economic loss rule, which prohibits a tort claim for purely economic loss. According to Electrolux, Plaintiffs' damages are limited to paying for a repair to the oven and for loss of use resulting

from being told not to use the self-cleaning feature on the oven.

Plaintiffs argue they allege more than just economic loss:  Plaintiffs and other putative class members have suffered property loss, financial harm, loss of use, and other damages.  Plaintiffs maintain that at the pleading stage, this is sufficient.  Plaintiffs also assert that the economic loss rule does not preclude their claims because they have a special relationship with Electrolux.

**1.      The Nature of the Alleged Defect and Resulting Damages**

As an initial matter, the complaint's allegations about the nature of the defect and the damages incurred are inconsistent.  As it pertains to their own Electrolux oven, Plaintiffs allege a defect with their oven's thermostat such that it cannot withstand the temperatures during the self-cleaning cycle – i.e., the thermostat malfunctions and quits operating (Cmplt., ¶ 12), apparently causing the entire oven to be unusable until the thermostat is replaced (Cmplt., ¶ 26).   After specifically defining the "Defect" as the burning out of the oven's thermostat during the oven's self-cleaning function, the complaint subsequently refers more generally to "Defects" in the oven caused by an unspecified problem in the "electrical system" creating a fire hazard (Cmplt., ¶¶ 26, 31, 85).  Plaintiffs apparently kept their oven even after the thermostat was repaired (Cmplt. ¶¶ 23-24), and never allege they were informed or believed it presented a safety or fire hazard.  They state only that the repair technician told them never to engage the self-cleaning function, presumably because it would again damage the thermostat.  Later in the complaint, however, there are allegations that the "Defects would cause their ovens to fail, combust, and catch fire – damaging the ovens and other property, and threatening the personal safety of customers."  (Cmplt., ¶ 82.)

The nature of the alleged defect and the problems it purportedly cause are directly related to assessing whether the economic loss rule applies, what problem Electrolux was allegedly aware of before the product was sold to Plaintiffs, and what may or may not be covered by any implied or express warranty.  The Court will evaluate Plaintiffs' claims on the basis of the defect as they define it and allege to have experienced it (design and manufacturing defects causing the oven's thermostat to

burn out while using the self-cleaning feature of the oven (Cmplt., ¶ 12)).  Subsequent allegations pertaining to different, unspecified defects in the oven's electrical system that posed a safety hazard or caused damage to property other than the oven will not be considered.[1]

### 2.    Economic Loss Rule Precludes Plaintiffs' Claims

In California, under the "economic loss rule," a manufacturer or distributor may be strictly liable or liable for negligence for injury to property caused by a defective product, but is not liable in tort for purely economic loss.  The product defect must cause damage to other property, that is, property other than the product itself.  *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483 (2003) (economic loss rule allows a plaintiff to recover in strict products liability in tort when product defect causes damage to "other property," that is, property *other than the product itself.*").

Plaintiffs' damages from the thermostat failure during the self-cleaning cycle are limited to economic loss, precluding their strict liability and fraudulent concealment claims.  Arguing there are damages alleged beyond purely economic loss, Plaintiffs point to allegations of "property loss, financial harm, loss of use, and other damages," but the only property loss Plaintiffs alleged was to the oven itself, which does not constitute more than economic loss.  *Jimenez*, 29 Cal. 4th at 483 (damage to property must be property *other* than the product).  "Financial harm" and "loss of use" as alleged generally by Plaintiffs are economic losses only.  *Casden Builders Inc. v. Entre Prises USA, Inc.*, No. 10-cv-2353 ODW (CWx), 2010 WL 2889496, at *3-4 (C.D. Cal. July 21, 2010) (defective product installed on climbing wall rendered wall inoperable; loss of use of climbing wall was economic loss). The "other" damage Plaintiffs allege is simply too vague and conclusory to credit as true.  *Twombly*, 550 U.S. at 554-55 (conclusory allegations not entitled to assumption of truth).  Plaintiffs note they alleged damage to the oven and *other property* in light of resulting fire danger from the defect, but

---

[1] Plaintiffs seek to amend the complaint to clarify certain allegations, including the date when the oven was repaired, and the terminology used in describing the oven as a "range." (Doc. 10, 5:13, n. 1-2.)  The Court also notes Plaintiffs allege the oven's defect rendered the ovens unusable in "their essential purpose as phones." (Cmplt., ¶ 106).  As the complaint requires amendment for other reasons, Plaintiffs will have opportunity to cure these issues, including clarification regarding the nature of the oven's defect or defects.

5

Plaintiffs do not allege *they* suffered any fire damage or that their oven posed a fire threat or hazard related to the oven's thermostat defect.[2]  Plaintiffs' alleged damage is limited to purely economic loss.

### 3.    No Exception to the Economic Loss Rule Applies

Plaintiffs maintain their claims are exempt from the economic loss rule because they have a special relationship with Electrolux.   An exception to the economic loss rule exists where the relationship between the parties is such that it would be equitable to impose a duty of care to avoid purely economic loss.  *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1148-49 (1995).  A special relationship depends on "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the Electrolux's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."  *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).

Whether a transaction is intended to affect the plaintiff in a particular manner under the first factor of the *J'Aire* test is a critical foundational requirement for a special relationship.  *Ott*, 31 Cal. App. 4th at 1455-56.  Under *J'Aire*, the transaction must be intended to affect the plaintiff in a manner *particular to him.  Id.*; *see also Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 368 (1997) (under common law, no special relationship where evidence did not suggest transactions intended to affect plaintiff or any other homeowners in a way particular to them, as opposed to all

---

[2] When Plaintiffs describe how their claim is typical of the class, they add allegations not included in alleging their own experience with their Electrolux oven:  "Plaintiffs and all Class Members own . . . an oven . . . with a uniform defect that makes [them] immediately dangerous upon purchase and causes them to fail within their expected useful lives and burn, melt, catch on fire, and burn areas surrounding the [ovens] in consumers' homes."  (Cmplt., ¶ 31.)  Plaintiffs had their oven thermostat repaired in 2016, but there is no allegation they removed the oven from their house after discovery of the defect, or that it posed a safety risk before or after it was repaired.  Indeed, in alleging the self-cleaning function caused the thermostat to stop working, Plaintiffs do not allege any melting of the oven, risk of fire damage, or other safety hazards posed by the defect causing the thermostat to stop functioning.  They allege only that the Sears repairperson told them not to engage the self-cleaning function again.  (Cmplt., ¶¶ 23, 26.)  The allegations about the nature of the purported defect and the potential damages and safety risks associated with the defect are not consistent between Plaintiffs' experience and the class allegations.

potential purchasers of equipment).[3]   A special relationship is precluded where intent to affect the particular buyer in a particular way is absent. *Ott*, 31 Cal. App. 4th at 1455-56.

In a typical retail transaction, the product is intended to affect a particular purchaser in the same manner as all other retail buyers, not in a manner particular to any individual buyer. Plaintiffs have alleged no facts showing the transaction was intended to affect Plaintiffs specifically. There is no allegation Electrolux was aware of Plaintiffs' oven purchase, and no suggestion that the oven was intended to affect Plaintiffs in any way different from any other purchaser. As Plaintiffs do not allege Electrolux intended to affect them in a particular manner, distinct from other retail buyers, a special relationship with Electrolux is foreclosed. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1054 (N.D. Cal. 2004) ("In this regard, California courts have been able to prevent the expansion of manufacturer liability for economic injuries suffered by a retail buyer *at large*, while at the same time allowing a particular party of whom the manufacturer has *specific knowledge* to go forward with a negligence action.").

Finally, Plaintiffs assert the economic loss rule does not apply to their claim of fraudulent concealment pursuant to *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). *Robinson* involved a contractual dispute where the court permitted damages in tort for fraudulent concealment, despite that damages were limited to economic loss. *Id.* at 985. Robinson manufactured helicopters, contracting with the defendant to provide a safety clutch made to particular specifications. Robinson's Federal Aviation Administration certification was predicated, in part, on the precise measurements of the clutch. *Id.* After some time, the defendant changed how it manufactured the part, altering the part specifications. *Id.* at 986. It did not, however, notify Robinson or the FAA of the change, but continued to provide certificates that the clutch had been manufactured in conformance

---

[3] *Superseded by* Right to Repair Act, California Civil Code § 896, under which manufacturers of individual products could be liable to homeowners for economic losses resulting from violations of the Act's standards. Thus, the common law duty assessed under *J'Aire* in that instance was supplanted by a statutory duty under the Act. *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1213 (2008).

7

with the precise measurements as required by *Robinson* and the FAA. After consumers began returning defective clutches to Robinson, the defendant finally disclosed that it had changed the manufacturing process and the clutch measurements for a certain period of time, during which the clutches failed at a statistically higher rate. *Id.*

While the clutch failures did not result in any helicopter accidents, injury, or property damage, Robinson was required to recall all the faulty clutch assemblies. Robinson sought replacement parts from the defendant, the defendant refused to contribute to the replacement costs, and Robinson filed suit for breach of contract, misrepresentation, and fraud. *Id.* at 987. On appeal, the court held that because Robinson suffered only economic loss, it could not recover in tort. The California Supreme Court reversed, holding that a contractual obligation may create a legal duty and the breach of that duty may support a tort claim. *Id.* at 988-93. In Robinson's case, the Court reasoned the defendant had made affirmative misrepresentations about the clutches by supplying false certificates of conformance which went beyond simply breaching the contract by providing faulty clutches. The Court explained that public policy favored extending tort remedies in this situation. *Id.* A breach of contract remedy assumes the parties can negotiate the risk of loss occasioned by a breach, and it is appropriate to enforce only such obligations as each party voluntarily assumed. *Id.* But, a party cannot rationally calculate the possibility the other party will deliberately misrepresent the terms critical to the contract; this makes it impossible to allocate the risks appropriately, and favors a remedy beyond contract. In reaching this determination, however, the court purposely and expressly noted the narrow scope of its holding applied only to a defendant's *affirmative* misrepresentations, actually relied upon, which exposes a plaintiff to liability for personal damages independent of any economic loss contemplated under the contract. *Id.* at 993.

Plaintiffs do not articulate any affirmative misrepresentations Electrolux made; they contend instead that Electrolux concealed the oven's defect. The lack of an identifiable affirmative misrepresentation forecloses the narrow exception envisaged in *Robinson*. Further, Plaintiffs were not

exposed to any personal injury damages independent of the economic loss that was foreseeable from a defective oven – the oven purportedly did not function until the thermostat was replaced. The type of damage Plaintiffs suffered is distinguishable from Robinson's exposure to personal injury liability, among other types of damage. The fraudulent concealment claim in this case is not predicated on affirmative misrepresentations that led Plaintiffs to be exposed to liability or damages beyond those expected from a defective oven. *Robinson* does not apply to Plaintiffs' fraudulent concealment claims as currently pled.

In sum, Plaintiffs' claims in strict liability and fraudulent concealment (Counts V, VI, and VII) as currently pled are precluded by the economic loss rule. Due to the discrepancies in the allegations regarding the nature of the oven's defect and the type of damages incurred, Plaintiffs will be given an opportunity to amend these claims if, and only if, they can cure the deficiencies as noted above.

**B.    Plaintiffs' Fraud-Based Claims (Counts VII, VIII, IX, and X) Are Not Pled with Specificity**

Plaintiffs' fraud-based claims include Count VII (common law fraudulent concealment),[4] Count VIII (California Legal Remedies Act ("CLRA")), County IX (California's Unfair Competition Law ("UCL")), and Count X (California False Advertising Law ("FAL")). These claims are based on Plaintiffs' theory that Electrolux knew its ovens contained defects with the thermostat during the self-cleaning function, but concealed that fact so that consumers had no knowledge of the defect. (Cmplt., ¶¶ 92, 104, 115, 122.) Each of these claims sound in fraud, and thus must be alleged with particularity under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (even though fraud is not a necessary element under the CLRA or the UCL, such a claim alleging the defendant engaged in fraudulent conduct is grounded in fraud and must satisfy heightened pleading

---

[4] Plaintiffs' Count VII for fraudulent concealment is dismissed pursuant to the economic loss rule, as discussed in the previous section. The lack of specificity discussed in this section is another deficiency Plaintiffs must cure in any amended claim for fraudulent concealment.

standard under rule 9(b)).

**1.      Elements of Plaintiffs' Fraud-Based Claims**

Under California law, the elements of fraud include (1) a misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co.*, 34 Cal. 4th at 990.   Fraudulent concealment is a type of fraud or deceit that requires proof of the same elements. *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 158 (2004).

The UCL prohibits unfair competition, which it broadly defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  Plaintiffs' claim here is predicated on the fraudulent prong of the UCL.[5] To plead fraud under the UCL, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1986).  A UCL claim must allege the injuries resulted from the fraudulent conduct, there was a causal connection or reliance on the alleged misrepresentation, and that reasonably prudent purchasers exercising ordinary care would have been misled.  *Pirozzi v. Apple., Inc.*, 966 F. Supp. 2d 909, 920-21 (N.D. Cal. 2013).

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA.  *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.

---

[5] A claim under the UCL's fraud prong is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort. *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011).  However, California Proposition 64, approved in 2004, imposed new standing requirements on UCL Plaintiffs. *In re Tobacco II Cases*, 46 Cal. 4th at 314.  As a class representative in this action, Plaintiff must plead actual reliance. *Id.*at 328.

App. 4th 1351, 1360 (2003). As such, courts often analyze the statutes together. *See, e.g., Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1468-73 (2009). In CLRA claims, like those under the fraudulent prong of the UCL, the representation will not violate the CLRA if the defendant did not know or have reason to know of the facts that rendered the representation misleading at the time it was made. *See Neu*, 2008 WL 2951390, at *3-4 (dismissing CLRA and UCL claims because plaintiff did not sufficiently allege that defendant knew its statements were false or misleading at the time they were made); *see also Wilson v. Hewlett-Packard,* 668 F.3d 1136, 1145-46 (9th Cir. 2012) (UCL and CLRA claims require actual knowledge).

The FAL proscribes "mak[ing] or disseminat[ing] . . . any statement . . . which is untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading . . . " "with intent directly or indirectly to dispose of real or personal property." Cal. Bus. & Prof. Code § 17500.

Electrolux argues Plaintiffs' fraud-based claims lack the requisite specificity to show how Electrolux had actual knowledge of the purported defect in its ovens, what specific misrepresentations or omissions were made by Electrolux, and how Plaintiffs relied on these misrepresentations or omissions to their detriment.

### 2. Misrepresentation or Omission/Concealment Allegations

Electrolux argues Plaintiffs have failed to articulate with any degree of specificity either an affirmative misrepresentation or concealment or omission by Electrolux. Plaintiffs maintain their fraud-based claims are predicated on fraudulent omissions or concealment, a type of misrepresentation subject to a "somewhat relaxed" 9(b) standard such that a plaintiff only need set forth an explanation as to why the omission was false or misleading, which Plaintiffs argue they have sufficiently alleged.

//

//

//

**(a)    Plaintiffs' Fraudulent Concealment, CLRA, and UCL Claims Insufficiently Plead an Omission/Concealment**

Alleging fraudulent omission or concealment is somewhat different from pleading an affirmative misrepresentation in that a plaintiff cannot generally plead either the specific time of an omission or the place it occurred.  *Falk v. General Motors*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.").  Despite this distinction, claims sounding in fraud, even concealment or omission claims, still must be pled with particularity.  *Kearns*, 567 F.3d at 1126 ("the contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing.").  "[T]o plead the circumstances of omission with specificity, [a] plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."  *Eisen v. Porsche Cars N.A., Inc.*, No. 11-cv-9405 CAS (FEMx), 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012).

Plaintiffs allege the thermostat in Electrolux's oven is defective and "burns out" while using the self-cleaning function.  (Cmplt., ¶ 12, 13.)  Plaintiffs claim Electrolux knew its ovens contained this defect but concealed this fact from consumers.  (Cmplt. ¶ 92.)  As discussed above, the nature of the defect, and thus the nature of the information Electrolux concealed, is not clear and thus not specific. While Plaintiffs allege and define their oven defect as one pertaining to the oven thermostat causing it to fail during the self-cleaning function, Plaintiffs later appear to allege a broader "electrical defect" that caused ovens to combust and catch fire, melt, and cause damage to other property besides the oven itself, creating a safety hazard.  (*Compare* Cmplt., ¶ 12 (defining defect as "oven's thermostat burns out while using the self-cleaning feature of the oven") *with* ¶ 90, 92 (defect in "the electrical system").) Plaintiffs themselves, however, did not allege they experienced an electrical defect in the oven that

caused a safety and fire hazard – in fact, Plaintiffs apparently fixed their oven's thermostat and kept the oven, albeit on the admonition not to engage the self-cleaning function without risk of damaging the thermostat again. After defining the "Defect" (Cmplt., ¶ 12), the complaint then refers inconsistently to "Defects" (¶¶ 15, 16). Paragraph 27 uses Defect and Defects interchangeably, and Paragraph 31 returns to claiming there is a "uniform Defect." It is possible the allegations can be clarified, but as the complaint is pled, it is difficult to know the specific nature of *what* defect or defects Electrolux allegedly concealed from Plaintiffs. For this reason, the Court cannot conclude that the circumstances of Electrolux' alleged omission or what information Electrolux withheld from consumers is pled with specificity. Plaintiffs' fraud-based omission/concealment claims are insufficiently pled for this reason.

### (b) Plaintiffs' FLA Claim Does Not Plead An Affirmative Misrepresentation

As with Plaintiffs' other fraud-based claims, Electrolux argues Plaintiffs have failed to identify any misrepresentations or untrue and misleading statements to support their FAL claim. Plaintiffs maintain their primary theory is predicated on an omission/concealment and argue it can be sufficiently pled by stating a reason why the omission was false and misleading. Even if the omission/concealment was not identified with requisite specificity, Plaintiffs contend they have adequately alleged Electrolux made misleading statements in the oven's express warranty.

A FAL claim is not cognizable when based solely on an omission of material information. *See, e.g., Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247, at * 8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all.") Even if a FAL claim involves a fraudulent omission or concealment, the complaint must still identify an affirmative statement that was made false or misleading by the omission of relevant and material information. *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016). To the extent Plaintiffs' FAL claim is predicated on a theory of omission, Plaintiffs must identify an actual affirmative statement by Electrolux that was made false by the omission of some material fact. Plaintiffs' FAL claim alleges only generally that Electrolux, through "advertising, marketing and other publications, [made]

13

statements that were untrue or misleading . . . ." (Cmplt., ¶ 122.)[6] If Plaintiffs' FAL claim is predicated on express statements in the warranty, as Plaintiffs suggest in their opposition brief, the complaint must specifically identify these statements so that Electrolux has sufficient notice of the representations Plaintiffs claim were false and misleading. As it stands, Plaintiffs' FAL claim fails to identify an affirmative misrepresentation or misleading statement with the requisite specificity. (*See* Cmplt., ¶¶ 120-126.)

### 3. Plaintiffs' Actual Knowledge Allegations are Insufficient

Electrolux argues Plaintiffs have not sufficiently alleged its actual knowledge of the defect with the self-cleaning feature and the thermostat. Plaintiffs maintain they have thoroughly alleged that Electrolux knew or should have known of the defect through (1) customer complaints posted on a website; (2) early warning systems, statistical analyses, audits, after-market testing, monitoring of warranty statistics and service call rates, tracking of returned products and parts, investigating of product faults, monitoring call center consumer complaints, and monitoring consumer complaints from other sources.

The Ninth Circuit's decision in *Wilson v. Hewlett-Packard* Co, 668 F.3d 1136 (9th Cir. 2012) explains the degree of specificity a plaintiff must allege a defendant's actual knowledge of a product defect in fraud claims. Pursuant to *Wilson*, to successfully allege a manufacturer was aware of a defect, a plaintiff is typically required to allege *how* the defendant obtained knowledge of the specific defect *prior* the plaintiff's purchase of the defective product. *Id.* at 1145-48. In that case, Wilson alleged his HP laptop would run on battery power, even when plugged into an a/c adapter, requiring him to replace the motherboard to utilize the laptop. Wilson alleged HP knew of this defect because of its access to aggregate information and data, another lawsuit against HP involving the same defect, and Wilson produced several customer complaints about the defect made by others.

---

[6] Plaintiffs claim the statements about the oven were false because the oven was sold with a "Defect" (Cmplt., ¶ 124), but the specific defect Plaintiffs is claiming is unclear.

The *Wilson* court contrasted actual knowledge allegations in several cases, first comparing cases where the allegations were sufficient. For example, in *Cirulli v. Hyundai Motor Co.*, No. 08-cv-0854-AG-MLGx, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009), the plaintiff alleged Hyundai vehicles were defective due to unusual vulnerability to premature oxidation and corrosion leading to structural deterioration. The plaintiff sufficiently alleged Hyundai knew about this defect because it constantly tracked the National Highway Traffic Safety Administration database for reports of defective Sonata sub-frames, and that database revealed Sonatas were experiencing unusually high levels of sub-frame deterioration and other structural deterioration issues. Contrarily, in cases where plaintiffs provided only conclusory allegations that the defendant manufacturer had access to information about the defect or was in a "superior position to know the truth about the [product]," the claims were deemed deficient. *Wilson*, 668 F.3d at 1147 (citing *Tietsworth v. Sears, Roebuck & Co.,* No. 5:09-cv-00288 JF (HRL), 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009); *Oestreicher v. Ailenware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2009)). Applying these cases, the *Wilson* court determined the allegation that HP had access to information and data was insufficient to suggest how any tests or information could have alerted HP, the other lawsuit did not specify the defect or allege the same problems, and most of the customer complaints were undated and from an unknown origin.

Here, Plaintiffs allege Electrolux had knowledge of the defect, in part, through consumer complaints posted on a consumer affairs website. Electrolux argues it had no reason to know of these complaints because it has no connection to this consumer affairs website nor have Plaintiffs alleged such a connection. Moreover, Electrolux maintains, very few of the complaints are relevant to the thermostat defect Plaintiffs experienced with their oven, and over half the complaints were posted *after* Plaintiffs had purchased Electrolux's oven.[7]

---

[7] The parties' argument about actual knowledge exemplifies again the vacillation in the complaint with respect to the definition of the "Defect." Even assuming the complaints were made on a forum Electrolux was connected to and would have or should have known about, only two of the consumer complaints deal with the thermostat and the self-cleaning function. The other complaints reference problems with the electrical "motherboard" or the electrical system in the oven

15

Consumer complaints or consumer reports of defects at a relevant time and in a manner that would provide notice of the defect to the defendant may be sufficient to show actual knowledge. *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1164-65 (N.D. Cal. 2011). Plaintiffs present complaints from a consumer affairs website, but unlike the consumer complaints in *Cirulli* and similar to those considered in *Wilson*, Plaintiffs allege no link between that website and Electrolux, such that Electrolux would have been aware of the complaints. Several people who posted complaints noted they had called Sears to report problems, but none alleged they contacted Electrolux. Without any factual basis showing how Electrolux would have been aware of these consumer complaints, they are insufficient to allege Electrolux's knowledge of the defect. Additionally, of the 23 consumer complaints Plaintiff references, only 10 were made before Plaintiffs purchased Electrolux's product, and of those 10, only two relate to the thermostat and the self-cleaning feature defect.

Plaintiffs also allege Electrolux obtained notice of the oven's defect through its own early warning systems and statistical analyses, and because Electrolux conducts a significant amount of after-market testing that should have informed it that the ovens had a defective electrical system. (Cmplt., ¶ 17.) While Plaintiffs' allegations are more than speculative assertions that Electrolux has knowledge of the defect due to its access to aggregate data or its "superior position," allegations found lacking in *Wilson*, they are too generic and non-specific to meet the requirements under Rule 9(b). Plaintiffs allege Electrolux knew of the defect because of its "early warning systems and statistical analyses that it employs, or should have employed . . . ." (Cmplt., ¶ 16.) Not only does this allegation lack specificity as to what early warning system or analyses were employed, it equivocates whether Electrolux actually has such early warning systems or analyses in place. Plaintiffs also allege Electrolux conducted a significant amount of after-market testing, but the complaint lacks any specific details about what type of after-market testing was performed and whether this unidentified testing was

generally, and do not appear connected to the self-cleaning function burning out the thermostat. (Cmplt., ¶ 31.)

16

performed prior to Plaintiffs' purchase of Electrolux's oven in June 2015.

Finally, Plaintiffs allege that Electrolux (1) monitors warranty statistics and service call rates to detect problems as soon as customers begin to experience them, (2) tracks returned products and parts to investigate faults and reduce warranty claims rates, and (3) employs quality engineers to monitor customer complaints from Electrolux's call center to detect problems. However, there are no allegations showing whether complaints were made to Electrolux's call center, or whether customers were otherwise reporting problems to Electrolux or returning the product or parts to Electrolux. To the extent these allegations are made on "information and belief" as noted in the complaint, this lacks the requisite specificity because there is no explanation upon what the belief is founded. *Shroyer v. New Cingular*, 622 F.3d 1035, 1043 (9th Cir. 2010) ("Fraud claims predicated on information and belief are not usually sufficiently particular, unless accompanied by a statement of facts on which the belief is founded.").

Plaintiffs' claims sounding in fraud (fraudulent concealment, CLRA, UCL, and FAL) lack the requisite specificity in alleging Electrolux had actual knowledge of the purported defect in its ovens. The customer complaints on a consumer affairs website have not been linked to Electrolux to show how Electrolux would have necessarily been aware of these complaints, and the allegations regarding systems or testing that Electrolux may or may not have had in place lack specificity and detail about what testing was performed, when such testing was done, or any allegation showing that complaints or defects were reported to Electrolux during the period before Plaintiffs purchased their oven.

### 4. Actual Reliance Allegations Are Insufficient

Electrolux argues Plaintiffs' actual reliance allegations for each of their fraud-based claims are inadequate because they fail to explain what marketing materials, statements, or representations Plaintiffs relied upon in making their purchase of Electrolux's product. Reliance can be shown in a fraudulent omission case by establishing that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently." *Boschma v. Home Loan Center, Inc.*,

198 Cal. App. 4th 230, 250-51 (2011).  To sufficiently plead reliance for a UCL claim, the plaintiff must establish that the defendant's misrepresentation or concealment was an immediate cause of the injury-causing conduct.  *In re Tobacco II Cases*, 46 Cal. 4th at 326-27.

Plaintiffs allege if they, or any of the class members, had known about the defect, they would not have purchased their oven.  (Cmplt., ¶¶ 26, 96.)  Plaintiffs' allegations about the nature of the defect are inconsistent, and their allegations of reliance on Electrolux's misrepresentations or omissions are mixed with other allegations about a seemingly different type of defect in the oven.  Without a specific and clear allegation about the nature of the defect, it is unclear what was concealed from Plaintiffs about the product and whether that information would influence the consumers' decision to buy the product.  For this reason, the actual reliance allegations are insufficient.

**C.      Plaintiff's Claim for Injunctive Relief is Not An Independent Cause of Action**

Count IV of the complaint seeks injunctive relief, but injunctive relief is a remedy not an independent cause of action and is subject to dismissal as such.  *City of South Pasadena v. Dep't of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994).  This claim is dismissed as an independent cause of action, but Plaintiffs may include their request for injunctive relief in the prayer of an amended complaint.

**D.      Warranty-Based Claims**

**1.      Plaintiff's MMWA Claim**

The Magnuson-Moss Warranty Act ("MMWA"), codified at 15 U.S.C. §§ 2301-2312, provides that a consumer may assert a civil cause of action to enforce the terms of an implied or express warranty.  Section 2310(d) provides that any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" may sue for damages and any other legal and equitable relief.

Plaintiffs allege that Electrolux provided a written warranty to them and the putative class that warranted the oven would be free from defects in materials or workmanship for a year from the original date of purchase including to those customers who purchased extended warranties that added an additional three years' guarantee of non-defective material workmanship. (Cmplt., ¶ 43.)  According to Plaintiffs, Electrolux breached the warranty obligations by failing to repair or replace the oven at no charge.

Electrolux asserts Sears provided the warranty to Plaintiffs, and since Electrolux did not provide the warranty, Plaintiffs' express warranty claim against it fails.[8]  Electrolux also argues that even if it had issued the warranty, it is limited to materials and workmanship and does not cover design defects. In response, Plaintiffs argue the warranty is available on Electrolux's website, and Electrolux has therefore either authorized the warranty or ratified it.  Plaintiffs also argue they alleged manufacturing defects, along with design defects.

With few exceptions, the Court must accept as true a complaint's well-pleaded facts in considering a motion to dismiss.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  The complaint alleges clearly that Electrolux provided a written warranty to Plaintiffs.  (Cmplt., ¶ 43.) Electrolux's argument that it did not actually issue the warranty is a dispute about the veracity of the allegations, not the sufficiency of the pleading.  Whether the warranty was *actually* issued by Sears or whether Electrolux somehow ratified the warranty by making it available to retailers or otherwise publishing it on its website is a factual determination requiring evidentiary support; it is not appropriate for decision on a motion to dismiss.  *Stamas v. County of Madera*, No. 09-cv-0752-LJO-SMS, 2010 WL 2556560, at *4-5 (E.D. Cal. June 21, 2010) (factual disputes cannot be resolved on a motion to dismiss).

---

[8] Electrolux's request for judicial notice of the "Sears' Use & Care Guide for the Kenmore Elite Electric Built-In Oven" for the model number of the Kenmore oven Plaintiffs allegedly purchased is granted.  Plaintiffs have referenced the document in their complaint, and do not dispute the authenticity of the document.  Fed. R. Evid. 201(b)(2); *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.), cert. denied, 525 U.S. 1001 (1998) (holding district court, in ruling on motion to dismiss, "may consider documents whose contents are alleged in a [pleading] and whose authenticity no party questions").

Electrolux also argues the warranty does not cover design defects, which is the sole type of defect Plaintiffs allege. Plaintiffs maintain they have alleged a materials defect covered by the warranty's guarantee of materials and workmanship. The complaint sufficiently alleges the thermostat defect was both a design and manufacturing flaw. (Cmplt., ¶¶ 12, 18 (defect caused by inherent design and manufacturing flaws).) Plaintiffs' warranty claim cannot, at this stage, be considered limited only to a design defect. While the nature of the specific defect alleged should be clarified in an amended complaint, the MMWA claim is pled sufficiently.

### 2. Plaintiffs' Implied Warranty Claims (Count III and XI)

Plaintiffs allege two implied warranty claims. In Count III, Plaintiffs allege an implied warranty of merchantability under the California Uniform Commercial Code. In Count XI, Plaintiffs state a claim for violation of the California Song-Beverly Consumer Warranty Act. Electrolux argues these claims fail because Plaintiffs have not alleged facts showing their oven was unfit for its ordinary purpose of cooking food.

The Song-Beverly Consumer Warranty Act is a "remedial measure intended for the protection of consumers and should be given a construction consistent with that purpose." *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1545 (2014). "The Act provides for both express and implied warranties." *Id.* The substantive elements are the same under the Song-Beverly Act and the [federal] Magnuson-Moss Act." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). "Under both, the court applies state warranty law." *Id.*

The implied warranty of merchantability requires that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The implied warranty of merchantability requires that the goods "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the

20

container or label." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). A "core test of merchantability is fitness for the ordinary purpose for which the goods are used." *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (2014). "Such fitness is shown if the product is 'in safe condition and substantially free from defects.'" *Id.* (quoting *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009)). A breach of the implied warranty of merchantability requires a plaintiff to show that the product does "not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

### (a)  Lack of Fitness for Ordinary Purpose Adequately Alleged

Electrolux maintains that despite the alleged problem with the self-cleaning feature, the oven still performed its basic function to safely and reliably cook food, which negates Plaintiffs implied warranty claim. According to Electrolux, Plaintiffs used their oven for approximately a year after they purchased it and then continued to use the oven after the thermostat problem emerged and was repaired. Plaintiffs respond that the oven was not fit for its ordinary purpose because the oven created a safety hazard. Moreover, Plaintiffs maintain that when an ancillary feature on a product, like the self-cleaning function on Plaintiffs' oven, cannot be used due to a defect, at least one case has held that a product may not be usable for its ordinary purpose. (Doc. 10, 27:18 (citing *Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF, 2016 WL 6476172, at * 11-12 (N.D. Cal. Nov. 2, 2016).)

While a defective product that causes a safety hazard will generally render that product unfit for its ordinary purpose,[9] Plaintiffs have not adequately alleged the defective self-cleaning function of their oven created a safety hazard. The allegations indicate Plaintiffs kept their oven after the thermostat problem was discovered and repaired, even though they were warned by the repairperson not to reengage the self-cleaning function. From this allegation, it cannot be presumed the existence of the defect created a safety hazard if Plaintiffs continued to use the oven despite awareness of the defect

---

[9] *Roberts v. Electrolux Home Prods. Inc.*, No. 12-cv-1644-CAS (VBKx), 2013 WL 7753579, at *1 (C.D. Cal. Mar. 4, 2013) (breach of implied warranty where, even though drier still functioned, it was not safe for its ordinary purposes because it caused a fire hazard during use).

with the thermostat. The oven was not unfit for its ordinary purposes based on a safety issue, at least as the defect is defined in the complaint. (*See* Cmplt. ¶ 12.)

Nevertheless, it appears Plaintiffs oven was unusable for its ordinary purpose between the time the defect manifested during use of the self-cleaning cycle and when Plaintiffs had the thermostat repaired by Sears. (Cmplt., ¶ 21 (after engaging the self-cleaning function, Plaintiffs discovered the oven had stopped working). The inability of the oven to properly heat and cook food after the thermostat was broken by the self-cleaning function rendered the oven unfit for its ordinary purpose. After the thermostat was repaired, Plaintiffs were told never to engage the self-cleaning function again. While the self-cleaning function may be an ancillary feature of the oven, the situation here is different from cases where an ancillary feature itself does not operate as promised, but the product still operates in a safe and reliable manner. For example, as long as a car can provide safe, reliable transportation, it is generally considered merchantable even if certain features such as a navigation system, do not function properly. *See generally In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 963, 2014 WL 2451291, at *27-28 (N.D. Cal. 2014) (ultimately concluding warranty claim cognizable because failure of navigation/entertainment system created a potential safety hazard). Here, engagement of the self-cleaning function rendered the oven unusable until the thermostat was replaced, and any use of the self-cleaning cycle after that would have allegedly resulted in complete failure of the oven again due to the broken thermostat. To restore the oven to any use, the thermostat had to be replaced. This is distinguishable from an ancillary feature that does not function properly due to a defect, yet the product itself continues to be fit for its ordinary purposes. Neither claim is deficient for failure to allege a lack of fitness for the oven's ordinary purposes.

### (b) Implied Warranty Claim Under California Commercial Code Fails for Lack of Vertical Privity

Electrolux argues Plaintiffs' implied warranty claim (Count III) fails because Plaintiffs allege they bought their oven from Sears, so there is no vertical privity between Plaintiffs and Electrolux.

Although the Beverly-Song Consumer Warranty Act allows for an implied warranty claim regardless of privity, implied warranty claims under the California Commercial Code still require privity of contract. Under California law, "[t]he general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954). An end consumer who buys from a retailer is not in privity with a manufacturer.

Although the parties do not dispute the privity rule applies to Plaintiffs' implied warranty claim under the California Commercial Code, Plaintiffs assert they are third-party beneficiaries of the agreement between Electrolux, the manufacturer of the oven, and Sears, the distributor from whom Plaintiffs purchased the oven. Plaintiffs maintain third-party-beneficiary status is an exception to the rule of privity. Electrolux argues the third-party beneficiary exception is not one recognized under California law in the consumer warranty context, and the Ninth Circuit's decision in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) foreclosed such an exception.

In *Clemens*, an automobile purchaser alleged DaimlerChrysler had breached express and implied warranties in the sale of a Dodge Neon containing defective head gaskets. The implied warranty claim was dismissed by the district court for lack of privity, and the Ninth Circuit affirmed reasoning that while some particularized exceptions to privity exist, neither the existing exceptions, nor the "similar equities" argued by the plaintiff, applied. The court declined the plaintiff's invitation to create a new privity exception as the "California courts [had] painstakingly established the scope of the privity requirement under California Commercial Code section 2314," and no new exception could be created by a federal court sitting in diversity." *Id.* at 1024.

District courts in California are split on a third-party beneficiary exception to privity in the consumer warranty context. Some courts have interpreted *Clemens* to foreclose application of the

third-party-beneficiary exception to the privity requirement for implied warranty claims.[10]   Other courts have distinguished *Clemens* on the ground that it did not expressly consider a third-party-beneficiary exception to privity, and note it was unclear whether the plaintiff in *Clemens* had specifically argued the third-party-beneficiary exception as articulated in *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978).[11]   In *Gilbert*, a plaintiff engaged a general contractor to construct a building, and the plaintiff subsequently sued a subcontractor whom the general contractor had hired to work on the project.  *Id.* at 76.  Although the trial court had dismissed the implied warranty claim for lack of privity, the appellate court found it did not need to decide the issue of privity, but instead found the plaintiff was a third-party beneficiary of the contract between the general and the subcontractor and was therefore able to maintain an implied warranty claim.

The Court is persuaded that *Clemens* forecloses a third-party-beneficiary exception to the rule of privity.  As discussed in *Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017), *Clemens* specifically addressed exceptions to privity in the consumer warranty context, but it did not recognize or acknowledge a third-party beneficiary exception.  Further, there is no published California authority recognizing this exception to privity in the consumer warranty context.  Although other district courts have cited *Gilbert* as California authority recognizing this privity exception,[12] *Gilbert* involved a subcontractor who was building a roof for a specific, identifiable customer.  As noted by *Seagate Tech.*,

---

[10] *See, e.g., Long v. Graco Children's Prods. Inc.*, 13-cv-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) ("[T]he Ninth Circuit does not recognize such an exception under California law, and the Court follows *Clemens*.  Although Long identifies several district court cases that allegedly allowed a third-party beneficiary exception, those cases are not binding on the Court whereas *Clemens* is."); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) ("No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made this sale.")

[11] *In re MyFord Touch Consumer Litig.*, No. 13-cv-3072-EMC, 2014 WL 2451291, at *31 ("Although *Clemens*, like this case, involved a plaintiff who bought a car from a dealership and then sued the manufacturer for a defect with the car, it is not clear whether the plaintiff argued for application of the third-party beneficiary exception specifically."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) (reasoning that "the Ninth Circuit had no occasion in *Clemens* to consider the California appellate cases recognizing the third party beneficiary exception to the vertical privity requirement of implied warranty claims").

[12] *See, e.g., Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008).

it is not clear that *Gilbert* "compels relaxing the privity rule for all end purchasers of products sold through retailers." *Seagate Tech*, 233 F. Supp. 3d at 787.  Standing alone, *Gilbert* is not sufficient to establish that the third-party-beneficiary exception is within the scope of the privity exceptions California courts have "painstakingly established." *Clemens*, 534 F.3d at 1024.  This Court is bound by *Clemens* and must dismiss without leave to amend for lack of privity Plaintiffs' implied warranty of merchantability claim under the California Commercial Code.  *In re Seagate Tech*, 233 F. Supp. 3d at 787; *Xavier*, 787 F. Supp. 2d at 1083; *Gonzalez v. Mazda Motor Corp.*, No. 16-cv-02087-MMC, 2017 WL 345878, at *3 (N.D. Cal. Jan. 5, 2017).

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Electrolux's Motion to Dismiss the following claims is DENIED:

    a.  Count I:  Violation of the Magnuson-Moss Warranty Act;

    b.  Count XI: Violation of the Song-Beverly Consumer Warranty Act;

2.  Electrolux's Motion to Dismiss the following Claims is **GRANTED with leave to amend**:  Counts V, VI, VII, VIII, IX, and X;

3.  Electrolux' Motion to dismiss the following claims is **GRANTED without leave to amend**:

    a.  Count III:  Breach of the Implied Warranty;

    b.  Count IV:  Injunctive Relief;[13] and

4.  An amended complaint shall be filed within 14 days from the date of this order.

IT IS SO ORDERED.

Dated:  __**January 8, 2018**__          _____**/s/ Lawrence J. O'Neill**_____
                                             UNITED STATES CHIEF DISTRICT JUDGE

---

[13] This does not preclude Plaintiffs from seeking injunctive relief as a remedy.