UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY STEWART AND ROBERT STEWART, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.,<br><br>Defendant. | 1:17-cv-01213-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER ON ELECTROLUX'S MOTION TO DISMISS<br><br>(Doc. 18) |

## I. <u>INTRODUCTION</u>

In September 2017, Plaintiffs filed a putative class action complaint against Electrolux Home Products, Inc. ("Electrolux") alleging defects in a self-cleaning oven Electrolux manufactures. (Doc. 1.) Pending before the Court is Electrolux's motion to dismiss claims IV through VI of Plaintiffs' First Amended Complaint ("FAC").[1] Plaintiffs filed a brief in opposition, Electrolux filed a reply brief, and the matter was taken under submission. For the reasons set forth below, Electrolux's motion to dismiss is GRANTED in PART and DENIED in PART.

---

[1] Plaintiffs' initial complaint was dismissed in part, and Plaintiffs were given an opportunity to amend.

1

## II. <u>FACTUAL BACKGROUND</u>

In June 2015, Plaintiffs purchased a Kenmore Elite wall oven that was manufactured by Electrolux and purchased from Sears for $1,964.99. (FAC, ¶ 49.) Prior to purchasing the oven, Plaintiffs researched various ovens online and in stores, and purchased a Kenmore based on the features it offered, including the self-cleaning function of the oven. Plaintiffs allege Kenmore's and Sears' advertising, developed by Electrolux, indicates that the oven's self-cleaning cycle can be used "to burn away baked-on messes and spills in the oven; no more crawling in to scrub the whole thing out." (FAC, ¶ 51.) Further, other online advertising on Electrolux's and Sears' websites heralded the oven's self-cleaning feature, including statements that the oven (1) "[p]rovides easy self-cleaning while keeping your family safe"; (2) "cleans itself – so you don't have to"; (3) has a "self-clean cycle so you won't have to hand scrub out every drop, drop or dribble"; and (4) has a self-cleaning function that "conveniently cleans the oven's interior using high temperatures to burn spills, soil and soot away without a bit of scrubbing." (FAC, ¶ 21.)

Plaintiffs conducted online and in-store research of various ovens before purchasing their oven model in June 2015, allege they purchased their Electrolux oven based, in part, on its self-cleaning feature. (FAC, ¶ 50.) In September 2016, Plaintiffs engaged the self-cleaning feature of the oven for the first time. After two or three hours, they discovered the oven had completely shut off during the self-cleaning cycle and would not turn on at all. (FAC, ¶ 54.) After the oven's failure, Plaintiffs contacted Sears and Kenmore about the oven's failure, but neither responded. Plaintiffs then arranged a repair through an authorized Sears-Kenmore customer service number.

During a service inspection in September 2016, Plaintiffs were informed the oven's thermostat could not support the temperature reached during the oven's self-cleaning function. Plaintiffs were told by the service technician that "the company" was aware of the defect, but that the oven had recently gone out of the warranty period, and Plaintiffs would have to pay for the replacement thermostat themselves. Without a replacement thermostat, the entire oven was inoperable. (FAC, ¶ 56.) The

technician also informed Plaintiffs that all modern ovens fail when the self-cleaning function is engaged because the thermostat is unable to withstand the high temperatures of that feature. The technician advised Plaintiffs never to engage the self-cleaning function or they would have to replace the thermostat again. The replacement of the thermostat cost $184.37.

Since replacing the thermostat, Plaintiffs have not used the self-cleaning feature of the oven because of the defect, and they forego use of the other features like the delayed baking start timer because they no longer trust the oven and its thermostat for anything other than its basic functions.

Plaintiffs filed this putative class action alleging Electrolux knew about the defect but intentionally misrepresented the functionality of the self-cleaning feature and concealed from consumers the defective thermostat. Plaintiffs stated claims, inter alia, under the California Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), and California's False Advertising Law ("FAL").

### III. LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*., 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'. . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>ANALYSIS</u>

### A.    Allegations Regarding Electrolux's 2016 Recall Are Irrelevant to the Thermostat Defect

Plaintiffs' original CLRA, UCL, and FAL claims were dismissed, in part, because the alleged defect was not described consistently in the complaint, making it nearly impossible to discern the type of defect Electrolux had purportedly misrepresented or concealed from consumers. In the FAC, Plaintiffs clarify the nature of the oven's defect and describe it as the "burning out" of the thermostat upon engagement of the oven's self-cleaning function: the ovens are defectively designed and manufactured because they are marketed and sold with thermostats incapable of supporting the temperatures reached during the self-cleaning feature. (FAC, ¶ 1.) Electrolux claims the alleged defect remains insufficiently identified because the FAC alleges a completely unrelated failure by Electrolux to disclose a different type of defect with a thermal switch in other products, which appears to have no bearing on the thermostat defect. (*See* FAC, ¶ 28.) Plaintiffs respond the complaint does not refer to a

4

thermal switch defect, but rather to a thermal switch defect recall that would have given Electrolux knowledge of the thermostat defect.

The FAC is bereft of any allegations that explain the relevance of the 2016 thermal switch recall issue. Plaintiffs allege the failure to disclose the recall was a fraudulent omission (FAC, ¶ 28), but that recall is entirely factually unconnected to the thermostat defect and occurred *after* Plaintiffs purchased their oven. Whatever Electrolux may have known about the thermal switch problems at some unknown time prior to the 2016 recall, there is still no factual showing *how* the thermal switch has *any* relationship to the oven's thermostat. Without demonstrating any factual connection between these two component parts, the omission of the 2016 recall is neither relevant to the defect Plaintiffs experienced with their oven of which Electrolux allegedly failed to disclose, nor relevant to Electrolux's knowledge of the thermostat defect. While allegations pertaining to the 2016 recall of ovens with a thermal switch defect are patently irrelevant without any factual allegations relating it to the thermostat defect, the recall allegations do not themselves doom Plaintiffs' claims: the CLRA, UCL, and FAL claims sounding in fraud are insufficiently pled for other reasons stated below.

**B.    Plaintiffs' CLRA, UCL, and FAL Claims Are Insufficiently Pled**

**1.    Pleading Requirements of CLRA, UCL, and FAL claims**

Plaintiffs' fraud-based claims include Count IV (California Legal Remedies Act ("CLRA")), County V (California's Unfair Competition Law ("UCL")), and Count VI (California False Advertising Law ("FAL")). These claims are based on Plaintiffs' theories that Electrolux knew its ovens contained a defect with the thermostat during the self-cleaning function that would cause the entire oven to malfunction upon engagement, but affirmatively misrepresented the self-cleaning ovens were fully functional while failing to disclose the thermostat defect. (FAC, ¶¶ 29, 111, 122, 129.) Each of these claims sound in fraud, and thus must be alleged with particularity under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (even though fraud is not a necessary element under the CLRA or the UCL, such a claim alleging the defendant engaged in

fraudulent conduct is grounded in fraud and must satisfy heightened pleading standard under rule 9(b)).

The UCL prohibits unfair competition, which it broadly defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiffs' claim here is predicated on the fraudulent prong of the UCL.[2] To plead fraud under the UCL, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1986). A UCL claim must allege the injuries resulted from the fraudulent conduct, there was a causal connection or reliance on the alleged misrepresentation, and that reasonably prudent purchasers exercising ordinary care would have been misled. *Pirozzi v. Apple., Inc.*, 966 F. Supp. 2d 909, 920-21 (N.D. Cal. 2013).

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Specifically, relevant portions of the act ban the following:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

> [(7)] Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Cal. Civ. Code § 1750(a)(5), (7).

Generally, the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA. *See Consumer Advocates v. Echostar*

---

[2] A claim under the UCL's fraud prong is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort. *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011). However, California Proposition 64, approved in 2004, imposed new standing requirements on UCL Plaintiffs. *In re Tobacco II Cases*, 46 Cal. 4th at 314. As a class representative in this action, Plaintiff must plead actual reliance. *Id.* at 328.

*Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). As such, courts often analyze the statutes together. *See, e.g., Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1468-73 (2009). In CLRA claims, like those under the fraudulent prong of the UCL, the representation will not violate the CLRA if the defendant did not know of the facts that rendered the representation misleading. *See Wilson v. Hewlett-Packard,* 668 F.3d 1136, 1145-46 (9th Cir. 2012) (UCL and CLRA claims require actual knowledge).

The FAL proscribes "mak[ing] or disseminat[ing] . . . any statement . . . which is untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading . . . " "with intent directly or indirectly to dispose of real or personal property." Cal. Bus. & Prof. Code § 17500.

### 2. Actual Reliance Allegations Insufficient to Confer Standing

Electrolux argues the FAC fails to allege Plaintiffs actually relied on any affirmative misrepresentations or omissions in purchasing their oven. Plaintiffs contend that to sufficiently plead actual reliance, they need only allege a misrepresentation of a material fact pursuant to the California Supreme Court's decision in *Tobacco II* and a California appellate court decision in *Chapman*, which they have done. (Doc. 20, 14:26:15:7 (citing *Tobacco II*, 56 Cal. 4th at 326 and *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, (2013).)

The UCL, FAL, and CLRA have independent requirements for standing, which mandate allegations of actual reliance. Upon passage of California Proposition 64 in 2004, a plaintiff asserting a UCL or FAL claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Proposition 64 represents an attempt to confine standing for UCL and FAL claims to those actually injured, and to curtail the prior practice of filing suits on behalf of clients who had not used the defendant's product or services, viewed the defendant's

advertising, or had any other business dealing with the defendant. *Id.* at 321. Similarly, the CLRA requires that a plaintiff suffered "damages as a result of" a violation of the statute. *Id.* at 326. Standing to bring CLRA, UCL, and FAL claims therefore, requires allegations of actual reliance/causation. *Id.*

To show actual reliance, whether based on an affirmative misrepresentation or a material omission, Plaintiffs must demonstrate the misrepresentation or omission was an "immediate cause of the injury-causing conduct." *Tobacco II*, 46 Cal. 4th at 328. Plaintiffs are not required to show that the misrepresentation or the omission was the "only," "sole," "predominant," or "decisive" cause of the injury-causing conduct, but that it was a substantial factor in their decision making process. *Id.*

### (a)    Reliance on Affirmative Misrepresentations

Plaintiffs' argument that adequately pleading reliance requires only an allegation of a *material* misrepresentation is an over-simplification. Actual reliance in the context of CLRA, UCL, and FAL claims requires a plaintiff allege that she (1) was exposed to (*e.g.*, heard, read, or saw) a defendant's representation regarding a product, (2) that was false and/or misleading, (3) to which a reasonable person would attach importance (materiality), and (4) incurred economic injury as a result (*e.g.*, by purchasing the product for more money than the plaintiff would have (or not purchasing the product at all) but for the misrepresentation). *Kwikset Corp.*, 51 Cal. 4th at 327 (noting the plaintiff's complaint satisfied the standing requirement because these four elements were met). The fourth element contains a causation and an economic damage requirement. If an alleged misrepresentation is material – which is generally a question of fact – then it can be inferred at the pleading stage that the resulting economic injury alleged is caused by the misrepresentation, satisfying the fourth element. But, this presumption or inference in no way undercuts the concurrent requirement that a plaintiff must allege he or she was actually exposed to a false or misleading representation. *Hall v. Sea World Entertainment*, No. 3:15-cv-660-CAB-RBB, 2015 WL 9659911 at *4 (S.D. Cal. Dec. 23, 2015). Plaintiffs allege the functionality of the self-cleaning feature was one of the bases for their decision to purchase the oven,

and therefore have sufficiently alleged materiality of the alleged misrepresentations about the feature's abilities and basic operability. As such, it can be inferred that the misrepresentation *caused* Plaintiffs' economic injury – *i.e.*, they overpaid or would not have purchased their oven but for the misrepresentation. That is not enough, however. There must still be an allegation Plaintiffs were actually exposed to the alleged misrepresentation, and they must do so with specificity. *In re Actimmune Mktg. Litig.*, No. 08-cv-2376-MHP, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009), *aff'd* 464 F. Appx. 651 (9th Cir. 2011). Plaintiffs have not done so.

While Plaintiffs allege they researched various ovens online and in the store prior to their purchase (FAC, ¶ 50), they do not allege with any specificity they were exposed to any of the *identified* advertising and product misrepresentations about the functionality of the self-cleaning feature. Although the alleged misrepresentations Plaintiffs identify were taken from Electrolux's product manuals and various product information/advertisements provided by Sears and Kenmore (allegedly developed by Electrolux), there is no allegation Plaintiffs viewed any of these specific materials in researching ovens prior to their purchase, nor do they allege *when* these particular advertising materials and statements were available to consumers such that it could be inferred any product research Plaintiffs conducted online or in the store prior to purchase would necessarily have included those statements. (FAC, ¶¶ 21, 50, 51.) The singular allegation that Plaintiffs researched various ovens online prior to purchase, absent any allegation they reviewed product materials *that included the identified alleged misrepresentations* about the functionality of the self-cleaning oven, is insufficient to plead actual reliance under the heightened pleading requirement of Rule 9(b). *Hall*, 2015 WL 9659911, at * 5 ("Because the complaint does not allege (let alone with any specificity) that any of the named plaintiffs saw and relied on SeaWorld's statements about its treatment of whales when purchasing their tickets, the named San Diego Plaintiffs lack standing to bring claims on behalf of the putative San

1  Diego Class.").[3]

2       Similarly, as to the statements made in Electrolux's 2014 annual shareholder report (FAC, ¶ 25)

3  regarding Electrolux's fairness, transparency, and honesty, Plaintiffs do not allege they reviewed this

4  annual report or read these statements prior to purchasing their oven. As such, Plaintiffs do not

5  sufficiently allege standing to pursue any fraudulent misrepresentations allegedly made about

6  Electrolux's fairness, transparency, or honesty in this annual statement.[4] Plaintiffs lack standing to state

7  CLRA, UCL, or FAL claims based on Electrolux's alleged affirmative misrepresentations.

8       **(b)    Actual Reliance on Fraudulent Omissions**

9       Electrolux also argues that Plaintiffs' claims should be dismissed because they have not alleged

10  actual reliance on any omissions. To plead reliance on an omission, a plaintiff must show that the

11  defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct – *i.e.*, that

12  had the omitted information been disclosed, one would have been aware of it and behaved differently.

13  *Tobacco II*, 46 Cal. 4th at 328.

14       Although Plaintiffs allege they would have behaved differently had the thermostat defect been

15  disclosed (they would not have purchased the oven or would not have paid as much as they did), they

16  have not shown that if the omitted information had been disclosed, *they would have been aware of it.*

17  As discussed in *Hall*, if a plaintiff fails to allege that he or she was actually exposed to alleged

18  misrepresentations by the defendant, the plaintiff cannot allege he or she would have been aware of the

19  omitted fact had it been disclosed at the time of the representation. 2015 WL 965991, at *5-6. In this

20  way, Plaintiffs' allegations about whether they were actually exposed to any misrepresentations in

21  Electrolux's advertisement and/or product information prior to their purchase is tied to Plaintiffs' actual

22  reliance on omissions in those advertisements and product information.

---

24  [3] Also, there is no allegation in the FAC that Electrolux's advertising statements were part of a long-term advertising campaign such that it is not necessary to plead and prove *individualized* reliance on specific misrepresentations or false statements pursuant to *Tobacco II*, 46 Cal. 4th at 328; *see also Hall*, 2015 WL 9659911, at * 4.

25  [4] These statements are also inactionable puffery, as discussed below.

In sum, the FAC fails to allege actual reliance sufficient for standing for Plaintiffs' claims under either a theory of affirmative misrepresentation or omission of a material fact.

### 3. Electrolux's Duty to Disclose the Defect is Insufficiently Pled

Plaintiffs' theory of fraudulent omissions is deficient for an additional reason, beyond Plaintiffs' failure to allege actual reliance. Plaintiffs fail to sufficiently allege Electrolux was under a duty to disclose the oven defect.

For an omission to be actionable under the CLRA and/or the fraud prong of the UCL, "the omission must be . . . of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). There are four circumstances where a duty to disclose a fact arises: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011). Under any of these theories, the plaintiff must allege (1) the existence of a material fact (2) of which the defendant was aware. *Wilson*, 668 F.3d at 1145. As such, a duty to disclose under any of these four theories arises *only* where the fact to be disclosed is material.

In cases of alleged concealment of defects that manifest *outside the warranty period*, the concealed fact must pose a safety concern for it to be material. *Wilson*, 668 F.3d at 1144. Plaintiffs allege the thermostat defect manifested outside the warranty period. (FAC, ¶ 56.) Despite allegations the thermostat was defective from the point of sale, and could have hypothetically failed at any point the self-cleaning feature was engaged during the warranty period, Plaintiffs' thermostat defect did not, in fact, manifest inside the warranty period.[5] While there may be a hypothetical claim during the

---

[5] In a well-reasoned and persuasive decision, the court in *Hodges v. Apple, Inc.*, No. 13-cv-1128-WHO, 2013 WL 6698762,

warranty period for a different class member (which would not require allegations of a safety defect to establish materiality), Plaintiffs do not have standing to pursue an omission claim for a defect arising inside the warranty period. *Cf. Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1017-18 (N.D. Cal. 2011) (plaintiffs in a punitive class action did not have standing to assert claims on behalf of class members where their alleged injury differed from the class members). As the FAC alleges a post-warranty manifestation of a defect, to be material the defect must pose a safety concern. *Wilson*, 668 F.3d at 1144.

The parties dispute whether Plaintiffs have sufficiently alleged the thermostat defect poses a safety concern. As explained in *Wilson*, not only must the alleged defect and the resulting safety concern be sufficiently alleged, a plaintiff must also plead a plausible causal connection between the two. *Wilson*, 668 F.3d at 1144 (proving a safety issue requires showing a "sufficient nexus between the alleged design defect and the alleged safety hazard"). The sum total of the safety-concern allegations in this case is limited to Plaintiffs' claim that an oven without a properly functioning thermostat inherently poses a risk of fire, and that Plaintiffs no longer "trusted" their oven after the thermostat was replaced. (FAC, ¶¶ 4, 59, 69.)

The allegations here are similar to those found insufficient to plead a safety concern in *Elias v. Hewlett-Packard*, 903 F. Supp. 2d 843 (N.D. Cal. 2012). In *Elias*, the plaintiff alleged his computer shorted out, melted, and was damaged beyond repair outside the warranty period. The plaintiff subsequently learned the wattage rating of the power supply was well below what was needed or recommended to run the computer. In bringing suit against HP under the CLRA, UCL, and FAL, the

---

at *7-8 (N.D. Cal. Dec. 19, 2013) expressly *rejected* the plaintiff's argument that a CLRA and/or UCL omissions claim could be stated without alleging a safety defect if the undisclosed defect was present from the time of manufacture of which the defendant was aware. The court explained the Ninth Circuit's opinion in *Wilson* specifically considered facts where the defendant was aware, prior to marketing and selling of the product, that it was inherently defective. *Id.* (citing *Wilson*, 668 F.3d at 1139). Yet, because the plaintiff's computer in *Wilson* manifested its inherent defect outside the warranty period, the Ninth Circuit required the plaintiff to establish the defect posed a safety concern. *Id.* Here, even to the extent the oven could have hypothetically failed at any point during the warranty, it did not do so: the defect manifested *after* the warranty period.

plaintiff alleged that due to the insufficient power supply, the computer was more likely to overheat, short out, melt, and catch fire, and thus create a significant safety risk. The court determined this was insufficient to allege a safety risk because there was no allegation the plaintiff's computer actually caught fire, the degree to which the computer melted, or why the melting itself created an unreasonable safety/fire risk. *Elias*, 903 F. Supp. 2d at 857 ("Plaintiff does not allege any explanation for how a lack of sufficient power causes laptops to catch fire.") As a result, the court determined the plaintiff had failed to establish a sufficient nexus between the deficient power supply and the risk his computer would catch fire or melt. *Id.* Although the plaintiff argued an inadequate power supply may send "voltage surges" through the computer and as a result his computer was more likely to catch fire, the court noted this was not based on any factual allegations beyond the plaintiff's own hypothetical theory and conjecture. *Id.*

Here, Plaintiffs do not allege any facts about *how* the thermostat fails, other than to say that it cannot withstand the temperatures during engagement of the oven's self-cleaning feature. Plaintiffs do not allege the thermostat ignited or that their oven caught fire during self-cleaning. Rather, they allege the oven simply shut down and stopped working during engagement of the self-cleaning feature due to the thermostat's failure, which actually underscores the oven's *safety*. Absent a functioning thermostat, the entire oven simply shut down; it did not heat up indefinitely, cause a fire, melt any portion of the oven itself, or ignite any wiring or any portion of the oven. Similarly, Plaintiffs' bare allegation that a defective thermostat is an inherent fire risk is speculative and conclusory, with no underlying factual basis to support the statement. The facts alleged do not show a potential safety/fire hazard nor is any such safety concern sufficiently linked to the allegedly defective thermostat. For this reason, Plaintiffs' claims fail on an omissions theory.

### 4. Electrolux's Alleged Knowledge of the Defect

Electrolux argues Plaintiffs have not sufficiently alleged its actual knowledge of the thermostat defect. Plaintiffs maintain they have thoroughly alleged Electrolux knew or should have known of the

defect through (1) customer complaints posted on various website; (2) early warning systems, statistical analyses, audits, after-market testing, monitoring of warranty statistics and service call rates, tracking of returned products and parts, investigating of product faults, monitoring call center consumer complaints, and monitoring consumer complaints from other sources; and (3) the July 2016 recall of different oven models for a thermal switch defect.

"[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145. The same is true for a claim under the UCL. *Id.* (allegation of knowledge at the time of sale required). Similarly, a plaintiff bringing a claim under the FAL must allege sufficient facts to show that a defendant knew, or should reasonably have known, the false or misleading statements were false when they were made. *Punian v. Gillette*, No. 14-cv-5028-LHK, 2015 WL 4967535, at * 9 (N.D. Cal. Aug. 20, 2015); *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1094 (S. D. Cal. 2010). Pursuant to *Wilson*, to successfully allege a manufacturer was aware of a defect, a plaintiff is typically required to allege *how* the defendant obtained knowledge of the specific defect *prior* the plaintiff's purchase of the defective product. *Id.* at 1145-48. Federal Rule of Civil Procedure 9(b) provides that allegations of malice, intent, knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). Nevertheless, allegations of the defendant's knowledge cannot be conclusory or speculative. *Punian*, 2015 WL 4967535, at *10.

Plaintiffs allege Electrolux had knowledge of the defect, in part, through 11 consumer complaints posted on a third-party consumer affairs website, 7 customer complaints on Electrolux's Facebook page, 4 complaints on Sears' website, and 2 consumer complaints on a Facebook page unrelated to Electrolux. Electrolux contends only the 7 consumer complaints on Electrolux's Facebook page are relevant, and of those, only one of those complaints relates to the self-cleaning feature defect.

Although Electrolux argues Plaintiffs fail to link most of the complaints to Electrolux itself, Plaintiffs have plausibly alleged Electrolux would have been aware of complaints made to Sears by

alleging that Sears is one of Electrolux's major distributors and customer complaints to Sears would have been monitored by Electrolux. In total, 11 customer complaints are linked to Electrolux, and each of these complaints (made to Sears and directly to Electrolux) discuss the self-cleaning oven becoming inoperable after use.[6] As for the complaints on the consumer affairs website and the unrelated Facebook page, there are no facts alleging any link between Electrolux and those webpages that would show Electrolux had knowledge of those complaints. *Resnick v. Hyundai Motor Am., Inc.*, No. 16-cv-593-BRO (PJWx), 2017 WL 1531192, at *15 (C.D. Cal. Apr. 13, 2017) (manufacturer's knowledge of defect not shown by customer complaints on unrelated third-party websites). Although Plaintiffs have alleged more consumer complaints specific to Electrolux, a few consumer complaints standing alone is insufficient to establish Electrolux's knowledge of a wide-spread defect allegedly affecting every single self-cleaning Electrolux has produced under any label to all distributors across the country. *Baba v. Hewlett-Packard Co.,* No. 09-cv-5946-RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect.")

Moreover, although Plaintiffs allege Electrolux's distributors certainly received complaints about the ovens that Electrolux would have been aware, Plaintiffs offers only a few customer complaints online directed to Sears, and none to Lowes, Home Depot, or Best Buy. (FAC, ¶ 46.) Additionally, it is unknown when hypothetical complaints to Electrolux's other distributors, other than Sears, would have been made. Plaintiffs' allegation in this regard is only speculation, with no factual link from which a reasonable inference of knowledge may be drawn.

---

[6] (*See, e.g.,* FAC ¶ 42 (g) ("We used our Electrolux Icon double wall oven's self-cleaning feature for the first time (we've only had it 2-3 years), and now both heat elements are non-functional."); ¶ 42(h) ("Service call to correct a no[-]heat condition in the oven. Thermostat was burned out as a result of using the self[-]cleaning function."); ¶ 42(i) ("I have an [E]lectrolux double wall oven[;] every time [I] use the self[-]clean feature, it stops working!"); ¶ 42(j) (". . . fuse still trips during every self-clean cycle"); ¶ 42(k) ("Latest decided to use self clean option on my oven (first time – don't use my oven very often) and guess what – now the oven does not work."); ¶ 42(t) ("Used the self clean function on oven, and afterwards it no longer worked."); ¶ 42(u) ("Every single time I run the self clean – I have to have a service call because the oven stops working.")

Aside from the relatively few complaints directed to Electrolux or Sears cited, Plaintiffs have not shown consumer complaints (even to unrelated third-parties) were so widespread that Electrolux had to have known (or reasonably should have known under the FAL) of the problems with the thermostat during the self-cleaning function. To wit, Plaintiffs are broadly alleging every single residential electric oven sold under brand names Electrolux, Frigidaire, and Kenmore that Electrolux has *ever* manufactured with a self-cleaning feature, sans any time-frame or model-type limitations, is defective by design and/or manufacture. One consumer complaint Plaintiffs cite dates back to February 2005, which is 10 years before Plaintiffs' oven purchase. Yet, over a course of 10 years (and perhaps more, since there is no allegation when the self-cleaning oven was first introduced to the market), Plaintiffs could only locate 24 consumer complaints, over half of which were not directed to Electrolux or its distributors. This is quite different from *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) where the plaintiffs presented several pages of complaints about the product for vehicles sold during a 4-year window of time. The court noted that the "amassed weight of these complaints" suggest that the speedometer failures were not isolated cases. *Id.* Even accepting complaints on websites unrelated to Electrolux, such a small number of complaints (in view of the alleged widespread nature of the defect over an unlimited period of time) do not show Electrolux was necessarily on notice of the defect.

Plaintiffs allege that Electrolux conducts a significant amount of after-market testing, and that Electrolux monitors statistics and service call rates in order to detect problems as soon as customers begin to experience them, it tracks returned products, and engineers monitor complaints from Electrolux's call center to detect problems. (FAC, ¶ 41.) The only difference between the original complaint and the FAC with regard to these allegations is that Plaintiffs point to Electrolux's 2014 annual report that states it bases its product development of consumer interviews and home visits. (FAC, ¶ 39, n. 10.) This, however, relates to product development, not necessarily quality control after production. As for statements in the 2014 annual report that Electrolux attempts to reduce costs for

warranty spending and monitors its reputational risks, Plaintiffs merely speculate this necessarily means Electrolux would obtain knowledge about any defect in a product from warranty information or other unknown "monitoring" protocols.

While the Court understands Plaintiffs do not necessarily have access to Electrolux's internal product quality testing or warranty monitoring systems, conclusory allegations do not suffice. Nearly every products manufacturer will have some quality control measures, and for those who extend product warranties, they almost certainly will monitor issues with those warranties and product return and failure rates. To accept Plaintiffs' general allegations about Electrolux's internal testing or quality controls it may or may not employ is to create a presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line, and more than that, to assume that knowledge from some unknown time after the product has been on the market. Even though knowledge allegations do not require specificity pursuant to Rule 9(b), they cannot be speculative or conclusory – more is required. For example, in *Ciruilli*, the plaintiffs had specific information that the manufacturer "constantly tracked" National Highway Traffic Safety Administration databases to monitor reports of defective car sub-frames, and the NHTSA data showed unusually high levels of sub-frame deterioration. *Ciruilli v. Hyundai Motor Co.*, No. 08-cv-0543-AG (MLGx), 2009 WL 5799762, at * 4 (C.D. Cal. June 12, 2009). This is more than an assumption the manufacturer monitored product performance after-market. Here, as with the original complaint, conclusory allegations that Electrolux must have internal quality control procedures or after-market testing that would have, at some unspecified point, given rise to knowledge of the defect are insufficient.

Finally, as for the July 2016 recall of products with the thermal switch defect, Plaintiffs have not alleged any facts showing how the thermal switch is linked to the thermostat defect such that it would have provided Electrolux notice of the defect. Plaintiffs have not described what a thermal switch is, why it matters, or how it is in any respect relevant to the oven's thermostat. Moreover, the July 2016 recall came *after* Plaintiffs' purchase of their oven, so it could not have provided knowledge

of the defect before Plaintiffs' purchase. While Plaintiffs maintain that Electrolux certainly would have had information relevant to the recall before it actually issued the recall in July 2016, even if this were true, it is entirely speculative that the information was garnered prior to Plaintiffs' oven purchase in 2015 or at the time the alleged misrepresentations were made.

### 5. Only Certain Alleged Affirmative Misrepresentations Are Actionable

Plaintiffs claim the following advertising and product information statements made or developed by Electrolux about the class ovens and its self-cleaning feature are misleading and/or false:

- "Provides easy self-cleaning while keeping your family safe."

- "Easy to cook in, easy to clean. Wipe down the sleek stainless steel surface with ease for a chic, clean kitchen. Use the self-cleaning cycle to burn away baked-on messes and spills in the oven; no more crawling in to scrub the whole thing out."

- "Self cleaning – your oven cleans itself – so you don't have to. Self clean options available in 2, 3, and 4-hour cycle."

- ". . . the lower oven has a 2- and 4-hour self-clean cycle so you won't have to hand scrub out every drop, drip, or dribble."

- "The self-cleaning function conveniently cleans the oven's interior using high temperatures to burn spills, soil and soot away without a bit of scrubbing."

- "Easy To Cook In, Easy to Clean. Wipe down the sleek stainless steel surface with ease for a chic, clean kitchen. Use the self-cleaning cycle to burn away baked-on messes and spills in the oven; no more crawling in to scrub the whole thing out." (FAC, ¶ 51.)

Plaintiffs allege these statements are misleading because the self-cleaning feature does not operate as advertised (*i.e.*, it malfunctions upon use) and use of the feature renders the oven inoperable for any purpose. Plaintiffs also maintain the representations regarding the safety of the self-cleaning function are false because the defect in the thermostat presents a fire risk. Finally, Plaintiffs assert that Electrolux's annual report to its shareholders state that the company is "transparent, honest and fair in all relations, both internally and externally," but by concealing the defect in the oven and refusing to uphold its warranty, the statement of Electrolux's transparency, honesty, and fairness is a misrepresentation. Electrolux argues all of the alleged affirmative misrepresentations Plaintiffs identify

18

are no more than vague, non-specific statements that are not actionable – *i.e.*, puffery.

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or CLRA. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005). "Puffery" or "puffing" is a seller's statement of its subjective opinion about the merits of a product, as opposed to a factual description of a characteristic of the product. *Hauter v. Zogarts*, 14 Cal. 3d 104, 111-12 (1975). Puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990). Nonetheless, "[w]hile product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citations omitted). For example, generalized statements that a product is "ultra-reliable" or "packed with power" say nothing about the specific characteristics or components of the product and are non-actionable. *Elias*, 903 F. Supp. 2d at 855. Also, statements of a product's superiority based on being "faster, more powerful, and more innovative," "higher performance," and having a "longer battery life" are nonactionable puffery. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).

The advertising statements Plaintiffs identify (FAC, ¶ 21) as misleading[7] are not "outrageously generalized" statements about how well the oven functions, but instead indicate very specifically that the oven comes with an *operating* self-cleaning feature, which Plaintiffs claim is misleading because the self-cleaning feature is not actually operable due to the defective thermostat. And, contrary to Electrolux's argument, although it is true in a very technical sense that the oven has a self-cleaning feature, this does not render the advertising statements about the self-cleaning feature non-actionable.

---

[7] Plaintiffs allege advertising and product statements made by Sears and Kenmore were developed by Electrolux.

If the self-cleaning feature is known to be inoperable or non-functioning, advertisements of an operable self-cleaning feature may be deemed misleading. *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008) ("The California Supreme Court has recognized "that th[e CLRA, FAL, and UCL] prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'") (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

Plaintiffs also allege these statements are false as to the safety of the self-cleaning feature because the defect poses a fire risk that threatens the safety of those nearby. The only alleged misrepresentation dealing with safety indicates the oven "provides easy self-cleaning while keeping your family safe." (FAC, ¶ 21 (https://www.elctroluxappliances.com/Kitchen-Appliances/Wall-Ovens/Single-Wall-Oven/E130EW38TS).) This is not a quantifiable statement or an absolute characteristic about safety that can be measured. Moreover, there are no allegations indicating there was a safety issue with the thermostat or the self-cleaning function. The FAC does not describe what happens to the thermostat in any detail to establish it creates a safety hazard; for example, there is no indication whether the thermostat melts or otherwise ignites when it is rendered inoperable during self-cleaning. Rather, the fact that Plaintiffs' entire oven became inoperable, shut down, and was unable to heat at all when the thermostat was damaged indicates the oven *was* safe – it did not catch fire, burn, or otherwise create a safety issue upon damage to the thermostat; it simply shut down and stopped working. When Plaintiffs repaired the oven, there are no allegations the repairperson noted any potential fire hazard; he only indicated the self-cleaning feature should not be engaged again to avoid damage to the thermostat. Absent any facts showing *how* the defective thermostat created a safety issue, Plaintiffs' conclusory allegation that a defective thermostat is an inherent safety concern is inadequate. Even if the statement about "keeping your family safe" was a specific and quantifiable representation about the safety of the self-cleaning feature, the allegations do not show how this is false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (claims

sounding in fraud must set forth what is false or misleading about a statement and why it is false). Plaintiffs' belief it is a safety hazard is not adequate without a sufficient factual basis to support such a belief. The sole statement about "keeping the family safe" during self-cleaning is not an actionable misrepresentation.

Finally, Plaintiffs also allege Electrolux's statements in its 2014 annual report to shareholders that the company is transparent, honest, and fair in all relations is false and misleading because Electrolux knowingly sold a defective product to consumers and refused to uphold its warranty. (FAC, ¶ 25.) As discussed above, Plaintiffs fail to allege they were exposed to this representation prior to the purchase of their oven or that it was one of the reasons they purchased their oven. Moreover, Electrolux is correct that this statement about transparency, honesty, and fairness is non-actionable. *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 28 (S.D.N.Y. 2016) (statements about reputation, integrity, and compliance with ethical norms are quintessential puffery). These statements are opinions about how the company operates generally, not measurable and easily quantifiable representations about the company or its production standards.

## C. Unjust Enrichment is Construed As A Quasi-Contract Cause of Action

Electrolux argues this claim must be dismissed as it is a remedy, and not a stand-alone cause of action. The Court agrees. Several decisions by the California Court of Appeals have held that unjust enrichment is not a cause of action, but a request for restitution. *See, e.g., Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011). Based on these cases, many district courts have concluded that there is no independent cause of action for unjust enrichment under California law. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030-31 (N.D. Cal. 2012) (citing *Hill*, 195 Cal. App. 4th at 1307). Recently, however, the Ninth Circuit held that under California law, unjust enrichment and restitution describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The return of a benefit is the remedy typically sought in a quasi-contract cause of action. *Id.* Thus,

when a plaintiff alleges unjust enrichment, it may be construed as a quasi-contract claim seeking restitution. *Id.* The plaintiff in *Astiana* alleged the defendant, a cosmetics manufacturer, had enticed her and other class members to purchase its products through false and misleading labeling, and the manufacturer was unjustly enriched as a result. *Id.* The court found this sufficient to state a quasi-contract cause of action. *Id.*

Here, Plaintiffs allege that Electrolux failed to disclose the defectively designed thermostat and, as a result, obtained monies for the ovens that Plaintiffs and class members would not have otherwise paid had they known the self-cleaning feature of the oven was defective. (FAC, ¶¶ 91-97.) Pursuant to *Astiana*, the court will construe this cause of action as one in quasi-contract seeking restitution, which is viable and cognizable; Electrolux's motion to dismiss this claim is DENIED.

**D.  Conclusion**

Despite an opportunity to amend their complaint, Plaintiffs have been unable to marshal the facts necessary to establish actual reliance for purposes of standing or knowledge on the part of Electrolux to support their FAC, UCL, and CLRA claims. Moreover, Plaintiffs fail to allege a safety defect to establish the materiality for purposes of an omission theory. It is clear Plaintiffs do not currently possess sufficient facts to cure these deficiencies. Plaintiffs' CLRA, FAL, and UCL claims are dismissed.

///

///

///

///

///

///

///

///

# V. **CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.    Electrolux's motion to dismiss is GRANTED in part and DENIED in part, as follows:

    a.    Electrolux's motion to dismiss Plaintiffs' CLRA, FAL, and UCL claims is GRANTED; and

    b.    Electrolux's motion to dismiss Plaintiffs' Unjust Enrichment claim is DENIED; this claim is cognizable.

IT IS SO ORDERED.

Dated:   **April 13, 2018**               **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE